### WILLIAM JACKSON v. THE STATE.

*No. 7192.    Decided May 6.*

1.    **Evidence—Voluntary Statement.**—At the examining trial the magistrate, before any witnesses were examined, informed the accused of his right to make a voluntary statement, and warned him that if he made such statement it might be used in evidence against him.    He made a statement, which was reduced to writing and properly certified by the magistrate, and this statement, over his objections, was used in evidence against him on his final trial.    *Held*, the statement was made in strict accordance with the provisions of the Code of Criminal Procedure, and was competent evidence against the defendant.

2.    **Same—Confessions.**—After making a voluntary statement, and after witnesses had been examined on the examining trial, the accused made a confession of guilt, which was reduced to writing, signed and sworn to by him before the magistrate, pending the examination.    In said confession he stated that he killed the child, and proposed to show the place where he had buried it.    He guided the magistrate and others to a

place in the woods which he pointed out as the burial place of the child, and where, upon examination made, bones, hair, clothing, etc., resembling those of a child, were found. *Held*, that the confession was a judicial confession, and was competent evidence against the defendant on the final trial of the case.

3. **Same.**—An exception to the rule that the confession of an unwarned defendant while in duress can not be used in evidence against him, is where, in connection with the confession, he makes a statement of facts and circumstances, found to be true, which conduce to establish his guilt. The facts thus stated by the defendant must be known to him through his guilty participation in the crime, and the truth of the same must be ascertained by means of the information derived from his statement.

4. **Same.**—To render a confession inadmissible upon the ground that it was induced by a promise of immunity from punishment, it must appear that the promise was positive, and made or sanctioned by a person in authority.

5. **Same — Expert and Nonexpert Testimony.**—As to matters of skill and science, the general rule is that nonexpert opinion is not admissible, and it has been held that such evidence was inadmissible especially with reference to questions pertaining to the human anatomy. When only mutilated remains have been found, it ought to be clearly and satisfactorily shown that the remains are those of a human being, and of one answering to the sex, age, and description of the deceased. With regard to such matters, ordinarily the opinion of medical men as to the condition of the human system and the anatomy of the human frame is alone admissible as evidence. But there are thousands of men who have seen human skeletons and the bones of human beings who are as competent to give a correct opinion whether the same are those of a human as so-called expert scientists. See the opinion for an instance of testimony as to bones which, though not the testimony of a medical man, was held to be competent.

6. **Same—Testimony Elicited by Defendant.**—Where a defendant in the cross-examination of a witness calls for and obtains the opinion of the witness who is not an expert, the defendant can not be heard to complain that the State was permitted on re-examination of the witness to also elicit the opinion of such witness upon the same matter. See the opinion for an illustration of this rule.

7. **Same—Corpus Delicti.**—In murder, the *corpus delicti* has two components— death as the result, and the criminal agency and identity of another as the means. A naked, uncorroborated confession is not sufficient of itself to establish the *corpus delicti*, nor to support a conviction. A confession is sufficient if there be such corroborative circumstances as will, taken in connection with the confession, produce conviction of defendant's guilt in the minds of the jury beyond a reasonable doubt. Such suppletory evidence need not be conclusive in its character. See the opinion for evidence held sufficient to establish the *corpus delicti*.

8. **Same—Identity of Deceased.**—To sustain a conviction for culpable homicide, it is indispensable that a dead body be found, and be clearly proved to be the body, or portion of the body, of the person alleged to be killed. It is equally indispensable that the death of the alleged person be clearly established before a conviction can be had, however cogent may be the other facts proved against the defendant; and the authorities concur that this proof must be clear and satisfactory beyond a reasonable doubt, and not even an extra-judicial confession of the accused that he killed the person alleged to have been killed will, uncorroborated by other evidence of the death, be sufficient to warrant a conviction. See the opinion for evidence held sufficient to identify the deceased as the person alleged to have been killed.

APPEAL from the District Court of Williamson. Tried below before Hon. W. M. Key.

The opinion states the evidence substantially.

*W. F. Robertson*, for appellant.—1. The court erred in admitting in evidence the defendant's confession: (1) Because the confession was not freely and voluntarily made. (2) Because it was made after witnesses had been examined in the examining trial. (3) Because when made the defendant was in custody, and was not warned that his statement might be used in evidence against him. (4) Because the officer who had the defendant in custody advised him to make said confession. (5) Because said statement was sworn to by the defendant. Code Crim. Proc., arts. 261, 262; Kirby v. The State, 23 Texas Ct. App., 13; Gentry v. The State, 24 Texas Ct. App., 80; Code Crim. Proc., arts. 749, 750.

2. The court erred in permitting the witnesses Slaughter and Barber to state their opinion as to the bones found, because said witnesses were not experts. Wilson v. The State, 41 Texas, 320; Lightfoot v. The State, 20 Texas Ct. App., 77; Puryear v. The State, 28 Texas Ct. App., 73; 3 Greenl. on Ev., sec. 133.

3. The evidence does not establish the *corpus delicti*. Penal Code, art. 549; Wilson v. The State, 41 Texas, 320; Lightfoot v. The State, 20 Texas Ct. App., 77; Puryear v. The State, 28 Texas Ct. App., 73; Harris v. The State, Id., 208; Walker v. The State, 14 Texas Ct. App., 609.

Appellant's counsel also filed a written argument, ably contending that the evidence was insufficient to support the conviction.

*R. H. Harrison*, Assistant Attorney-General, for the State.

WHITE, PRESIDING JUDGE.—Appellant was convicted in the court below of the murder of his own child, which was only some three months old, the conviction being for murder in the first degree, with a life penalty in the penitentiary.

After defendant was arrested for the crime an examining trial was held by a justice of the peace. At this trial, before any of the other witnesses were sworn, the defendant was informed by the justice of his right to make a voluntary statement as provided for and in accordance with the terms of articles 261 and 262 of the Code of Criminal Procedure, and he was expressly warned that if he made any such statement it might be used in evidence against him. He made a statement, which was reduced to writing and properly certified by the justice. In this statement he said he had given the child away on this side the Yeagua to a man who was traveling in a wagon. Other witnesses were then examined, and when the court convened, after a noon recess, the justice was informed by the constable who had charge of the prisoner that the defendant wished to make another statement, and upon his inquiring of defendant if such was the case, the latter said he did desire to make another statement. The justice then testifies, "and he then confessed that he had killed his child, Andrew Jackson, and said he would go and show where it was buried." Court then adjourned,

and the justice and parties in attendance upon the court went, under defendant's direction and with him, about a mile and a half down the road, and then, leaving the road, went some four hundred yards into the woods until they came to a spot where the defendant pointed out a hole in which he said he had buried the child. This hole had the appearance as though the dirt had been scratched out of it by animals or birds of prey. Scattered around and near this hole were found a number of small pieces of bone, none of them over four inches in length or more than two and a half inches in width; also some locks of black, curly hair, perhaps two inches long, which corresponded with the hair of the supposed murdered child, and some articles of baby clothing, among which was a small black and white spotted calico bonnet, which the witness Barber thought he identified as the bonnet his wife had made for and given the missing child some time before.

At this point, and after these discoveries, the defendant, being duly sworn, made the following statement, which was reduced to writing, viz.:

"When I left Mr. Wash Smith's, in Williamson County, I came down the road a piece. I did not intend to kill it, but it began to cry. Then I brought it here and killed it—mashed its head with my fist. I then digged a hole with my hand. Then I put the body in the hole and covered it up. Then I put a log over it. Then I prayed over it. Then I went on to the road and then on down to where I was arrested."

This confession was sworn to and signed by the defendant, and certified by the justice of the peace.

As a motive for the perpetration of this horrible crime, it was shown that defendant and his wife had had family quarrels and troubles, and they were about to separate, if, in fact, they had not already separated; and it was further proved that defendant had time and again threatened that he would kill both his wife and child in consequence of these family troubles.

No physician or other scientific person or expert skilled in human anatomy examined the bones which were found about the place where defendant confessed he had killed and buried the child. None of the witnesses who examined them were scientific experts. The only one who attempted to qualify as such was the justice, who, before he was permitted to give his opinion as to the character of said bones, stated that "he had seen several human skeletons, and from what he knew of human bones these resembled the bones of a child;" and he stated on cross-examination, "I have never seen the skeleton of a rabbit or of an opossum or of a coon. I do not know whether or not I could tell the bones of a small child from those of a coon or rabbit. I do not know what kind of bones the bones found were; can only give what I think." Another witness, Barber, testified that he knew nothing of anatomy, and had never seen a human skeleton. "I took the bones found to be human bones. They were different in shape from any

bones I had ever seen. I have seen the bones of a rabbit and fox and opossum. I could tell the bones of those animals from those of a child the age of defendant's child Andrew. The bones found were not the bones of those animals."

Dr. Foster, a regular practicing physician, who was present and heard the testimony of the other witnesses as to the description and appearance of these bones, testified: "From the description given by the witnesses, I could not say what they were. From the number and description of the flat pieces they would correspond with the number of bones of the head, and if placed together would make a surface about equal to a child's head. That a child had in its body bones similar to all those described, and that these oval shaped bones described by the witnesses would be like the skull bones of an infant child if the same was broken to pieces."

Objection was made to the testimony of the non-expert witnesses as to their opinion with respect to these bones. In granting the bills of exception so reserved, the learned trial judge, by way of illustration, says, "that defendant's objections to any and all witnesses stating their opinion as to whether the bones were human bones were sustained, and witnesses only allowed to describe the bones, except that the witness Slaughter (justice of the peace), after stating that he had seen several human skeletons, was permitted to state that the bones found resembled human bones; and the witness Barber was, on cross-examination by defendant's counsel, asked if he knew what kind of bones those he found were, and he answered that he took them to be human bones. Defendant's counsel then asked him why, and he answered the ribs were of different shape from any animal he had ever seen. Then, on re-direct examination, the district attorney, over defendant's objection, was allowed to ask the witness to give his best judgment as to the kind of bones they were, and he said he took them to be human bones. This question was allowed, because defendant's counsel had asked the witness the same question.

As to matters of skill and science the general rule is that non-expert opinion is not admissible, and it has been held that such evidence was inadmissible, especially with reference to questions pertaining to the human anatomy. Wilson v. State, 41 Texas, 320.

Mr. Greenleaf says: "When only mutilated remains have been found it ought to be clearly and satisfactorily shown that the remains are those of a human being and of one answering to the sex, age, and description of deceased." 3 Greenl., p. 133.

With regard to such matters ordinarily the opinion of medical men as to the condition of the human system and the anatomy of the human frame is alone admissible as evidence. Laws. on Expert Opin. Evid., 107, 195, 197. But there are thousands of men who have seen human skeletons and the bones of human beings who are competent to give a

correct opinion as to whether the skeleton and bones are such as many of the so-called expert scientists. A man who has once seen a human skeleton is not afterward likely, we imagine, to mistake the skeleton of any other animal for it. Of course it may be and doubtless would be different as to the small portions and bits of detached bones. Still in the case in hand, in the light of the explanation of the learned trial judge, we can not say that he erred in permitting the witness Slaughter, with the qualifications he showed he possessed, to testify as to his opinion, and certainly as to the witness Barber the defendant has no right to complain, since by his own examination of this witness he invited and called for the expression of opinion he now complains of.

Objection was made to the admission in evidence of both the statement made by defendant at the examining trial and his subsequent confession of guilt as heretofore detailed. The voluntary statement was made in strict compliance with the statutory provisions of the Code of Criminal Procedure, articles 261 and 262, and was legitimate evidence as such statement.

As to the confession, while it was not a "confession made in the voluntary statement of the accused taken before an examining court," because it was made after other witnesses had been examined, and was moreover sworn to by the defendant (Code Crim. Proc., arts. 261, 262; Walker v. The State, 28 Texas Ct. App., 112), still, though not admissible as "a voluntary statement" it was nevertheless admissible as a confession, if in connection with such confession he made a statement of facts and circumstances that were afterward found to be true which conduced to establish his guilt. Code Crim. Proc., art. 750.

"An exception to the rule that the confession of an unwarned defendant while in duress can not be used in evidence against him is when, in connection with the confession, he makes a statement of facts and circumstances found to be true which conduce to establish his guilt. The facts thus stated by the defendant must be known to him through his guilty participation in the crime, and the truth of the same must be ascertained by means of the information derived from the defendant." Musgrave v. The State, 28 Texas Ct. App., 57; Brown v. The State, 26 Texas Ct. App., 308; Willson's Crim. Stats., sec. 2473. But it is objected to the confession that the defendant was induced to make it by the constable who had him in custody during the recess of the examining court, and who told defendant that it would be better for him if he would tell the truth. "There must be a positive promise made or sanctioned by a person in authority to justify the exclusion of the confession." Whart. Crim. Ev., 8 ed., p. 651; Searcy v. The State, 28 Texas Ct. App., 513.

Defendant confessed that he had murdered the child, and told the justice that if he and the others would go with him he would show them where the deed had been committed by him, and where he had buried his innocent victim. They went and he led them to the spot. The little

grave, the scattered pieces of bones, the locks of black curly hair, the articles of baby clothes, and especially the little black and white spotted calico bonnet, identified by Barber, discovered at this secluded spot in the woods, were found through his instrumentality, and certainly conduced to establish his guilt, and also the truth of his confession.

But it is insisted that the *corpus delicti* is not sufficiently established to warrant this conviction. In murder the *corpus delicti* has two components—death as the result, and the criminal agency and identity of another as the means. Ruloff v. The People, 18 N. Y., 179; The People v. Bennett, 49 N. Y., 137; Smith v. The Commonwealth, 21 N. Y., 820. A naked, uncorroborated confession is not sufficient of itself to establish the *corpus delicti*, nor to support a conviction. Willard v. The State, 27 Texas Ct. App., 386; Brown v. The State, 1 Texas Ct. App., 154; Harris v. The State, 28 Texas Ct. App., 308.

A confession "is sufficient if there be such extrinsic corroborative circumstances as will, taken in connection with the confession, produce conviction of defendant's guilt in the minds of a jury" beyond a reasonable doubt. 4 Am. and Eng. Ency. of Law, p. 309.

"Such suppletory evidence need not be conclusive in its character. When a confession is made, and the circumstances therein related correspond in some points with those proven to have existed, this may be evidence sufficient to satisfy a jury rendering a verdict asserting the guilt of the accused. Full proof of the body of the crime, the *corpus delicti*, independently of the confession, is not required by any of the cases, and in many of them slight corroborating facts were held sufficient." See the cases cited and collated in 3 American and English Encyclopedia of Law, p. 447.

In this case we have seen the corroborating facts as they are above set out. In addition thereto, defendant was the last person seen in company with the child on the day on which it was supposed to have been killed. There is not a particle of testimony that the child was not in perfect health at that time, and it has never been seen by any human being alive since, so far as is shown.

Was the body sufficiently identified? Our statute provides that no person shall be convicted of any grade of homicide unless the body of the deceased, or portions of it, are found and sufficiently identified to establish the fact of the death of the person charged to have been killed. Penal Code, art. 540; Puryear v. The State, 28 Texas Ct. App., 73.

After quoting the above statute, the ruling held in Walker's case, 14 Texas Court of Appeals, 609, giving a construction to its provisions, was "that in order to sustain a conviction for culpable homicide it is indispensable that a dead body be found, and be clearly proved to be the body or portions of the body of the person alleged to be killed. It is equally indispensable that the death of the alleged person be clearly established before a conviction can be had, however cogent may be the

other facts proved against the defendant; and the authorities concur that this proof must be clear and satisfactory beyond a reasonable doubt, and not even an extra-judicial confession of the accused that he killed the person alleged to have been killed will, uncorroborated by other evidence of the death, be sufficient to warrant a conviction." See also Lovelady v. The State, 14 Texas Ct. App., 545; Robinson v.The State, 16 Texas Ct. App., 347.

In the case in hand the confession was not an extra-judicial confession. It was a confession made in a court of competent jurisdiction, sitting for the purpose of investigating and examining into a case of which it had jurisdiction under the law. It was a confession made in writing, and signed and sworn to by the defendant. The action was a criminal action, and under the act of 1889, General Laws Twenty-first Legislature, p. 37, the defendant had the right to testify as a witness even in an examining trial, independently of his right to make a voluntary statement. It was a most solemn judicial confession, under the sanction of an oath, and under the most solemn circumstances, and there is no evidence that the defendant was insane, or that he was improperly induced to make it, or that it was induced either by hope of immunity or fear of punishment. It was a voluntary confession. Being a legitimate confession, it was legitimate evidence as to the facts stated. This evidence, taken in connection with the other facts—the bones which corresponded with those of a child the age of deceased, which the witnesses believed to be human bones, and which the professional expert, who heard their description of the bones, said could have been the bones of a child the age of the deceased, the locks of black curly hair and the baby clothing also found at and around the grave, and especially the little black and white spotted calico bonnet identified by the witness Barber, in fact all the antecedent, concurring and attendant circumstances—in our opinion, sufficiently and conclusively established the fact that the bones found were identified as those of the child, and that the child was murdered by the defendant; and we are further of the opinion that the jury were so warranted in finding beyond any reasonable doubt.

We have found no reversible error in the record, and the judgment is in all things affirmed.

*Affirmed.*

Judges all present and concurring.