### RICHARD HOLMES v. THE STATE.
*No. 610.  Decided October 21.*

**Confession Under Arrest—Evidence.**—A mere purpose on the part of an officer to arrest a party, where the purpose has not been carried into effect by an actual arrest, will not render a confession made by the party to the officer incompetent or inadmissible as evidence.

APPEAL from the District Court of Bexar. Tried below before Hon. G. H. NOONAN.

This is an appeal from a conviction for burglary, the punishment assessed being a term of two years in the penitentiary.

As illustrative of the question discussed in the opinion, it is only necessary to reproduce the testimony of James Bowen, who, being sworn in behalf of the State, testified: ·I am a city detective; have been on the detective force since the 17th day of March, 1893; prior to that time I was on the police force of the city of San Antonio for about seven years. As a policeman I wore a uniform, and was often on duty on the main streets and plazas of the city. Since I have been a detective I have not worn a uniform, but wear a badge under my coat; it can not be seen unless I intend to show it by turning my coat out. Soon after the middle of April last I learned of a burglary having been committed at S. Dodic's store, on West Commerce Street, in this city, and went there to see about it. The transom over the rear door appeared to have been broken. I could not tell whether anything had been taken or not, except from what Dodic told me. He gave me a description of what he missed, and after that I kept on the lookout for such articles. A few·days after that, I met a boy over the San Pedro, who had on a coat of one taken from another party not Dodic. When I questioned him about it, I received information that induced me to go with him to where he said he could point out a boy from whom he got the coat. He told me the boy's name was Richard Holmes, and he led me to a little house on North Laredo Street. The house was about 12x14 feet; it seemed to be newly built. When we came to the house, the defendant and the two Storbeck boys were inside. As we came up to the door of the small house, and saw who was inside, the boy who was with me, and whose name, I believe, is Autry, pointed to the defendant, and said, "That is the boy I got the coat from." I then asked him questions concerning it. I had not arrested him at this time, or informed him that I intended to arrest him. I went there to arrest him if I found the boy Autry identified him as the boy he got the coat from. I did not intend to let him go, and at no time after I came in his presence I would not have permitted him to escape. I intended to take him back with me to police headquarters at the city hall. Before I told him I arrested him, I wanted to investigate the matter. I did not tell him I was an officer. I did not exhibit my badge. I did not inform him of my intention to arrest him for the theft from Dodic.

My intention was, in going there with Autry to arrest the boy he identified as the boy Autry obtained the coat from. I noticed the defendant had on a pair of pants that corresponded with the pants described by Dodic. Defendant also had on a pair of shoes which answered the description given me of those taken from Dodic. I saw these articles on the defendant when I first came in. As soon as I came in, I went up to Holmes and asked him, "Where he got the coat?" (Objected to by defendant, as he was under arrest at the time; objection overruled.) He then said, "He got it from a Mexican boy." I asked him, "Who was the Mexican boy?" He said, he didn't know, and that was about all I

could get out of him on that. I then noticed a shirt on him that had been described by Dodic, and I asked him where he got that shirt, and he said he got it on Commerce Street. I asked him also, where he got the shoes he had on. He said he got them on Commerce Street. I identified the shoes as answering the description given me by Dodic. I then asked him whereabouts on Commerce Street; and he said it was on West Commerce Street, near a chop house; and I asked him if it was not a fact that he had stolen them, and he hestitated a little bit, and said nothing in reply. I then said, "You stole them things last Sunday, down at Dodic's," and he said, "Yes." I then said, "How did you get them?" He said, he went over a transom in the rear of the store, and opened the door from the inside; that the Mexican had helped him over, and that they went in and got the things there on that Sunday. I kept him there until I took him to the city hall, and he has been in confinement ever since. I further asked him where the rest of the shirts were that were taken from Dodic's. He did not answer, but hestitated. I then asked him if he had a trunk. He said, "No." I asked him whose trunk it was setting there, and he said it was the Storbeck boys'. I said I wanted to see if there was not some more things in there that had been stolen from Dodic, and one of the boys said I could look into the trunk if I wanted to, and I looked into it. I did not find any of the clothes or shoes that had been stolen from Dodic's. I noticed about this time one of the Storbeck boys had on one of the shirts that had been stolen from Dodic, and then I arrested them and carried them to the station. I afterwards found some thread and a suit of underclothes in possession of these boys, which, with the pants and shirts, were claimed by Dodic to be his. I also found about the house some silverware and fruit, and coffee and stuff that was claimed by the Southern Hotel, where the Storbeck boys had been and were then employed.

Question. Repeat the description of all the articles you found in the house and on the boys that proved to have been stolen from Dodic's.

Answer. Well, there was two pairs of shoes, a pair of pants, two shirts, and a set of underwear, I think. I don't remember whether there was anything more than that or not. Yes, there was some thread; I remember that now; it was in the trunk. That was in Bexar County, and State of Texas. I went to the place where I arrested the defendant and the Storbeck boys with Autry, to see if I could discover who had stolen the coat Autry had on. I did not go there to arrest any one for the Dodic robbery, but as soon as I came there I discovered that the defendant had on pants and shoes corresponding with description given me by Dodic.

*Tarleton & Altgelt* and *Edward Dwyer*, for appellant.

*R. L. Henry*, Assistant Attorney-General, for the State.

SIMKINS, JUDGE.—Appellant was convicted of burglary, and his punishment assessed at two years in the State penitentiary.

The only question that need be considered is, did the court err in admitting the confession of appellant? The State witness Bowen was a detective, and had been a policeman. Obtaining a description of the property burglarized from the Dodic store, he met a boy with a coat stolen—not, however, from the store. On asking where he got it, he was carried by the boy to appellant, as the one from whom he received it. While questioning appellant about it, he recognized the pants and shoes then worn by appellant as the Dodic goods, and charged him with the theft. Appellant admitted he had burglarized the store by going in over the transom. The witness says: "I had not arrested him at this time, nor informed him I intended to arrest him. I wanted to investigate the matter before I arrested him. I did not tell him I was an officer. I went there to arrest him, if identified by the boy as the one he got the coat from. I did not intend to let him go, and at no time after I came in his presence would I have permitted him to escape." Appellant insists that this purpose was in itself an arrest. The proposition contended for seems to be, that no policeman or detective or other officer can receive the confession of a criminal who may know or have reason to believe he is such. Such is not the law. There is no evidence here showing that appellant was under arrest at the time of making the confession, and the court did not err in admitting it. Williams v. The State, 19 Texas Cr. App., 279.

Judgment is affirmed.

*Affirmed.*

Judges all present and concurring.