December 16, 1895.)

# STATE v. ELLINGTON.

[43 Pac. 60.]

CRIMINAL PRACTICE—INDICTMENT—MURDER.—Where, as in Idaho, the statute defines what shall constitute murder, an indictment which sets forth the crime in the language of the statute is sufficient.

SAME—DEGREE OF MURDER NEED NOT BE STATED IN INDICTMENT.—The finding of the degree of murder being, by statute, required to be found by the trial jury, it is not essential that the definitions of the various degrees should be stated in the indictment. *People v. O'Callaghan*, 2 Idaho, 156, 9 Pac. 414, overruled.

EVIDENCE—VOLUNTARY STATEMENTS BY DEFENDANT.—Voluntary statements made by a defendant at the time of and while under arrest, it not appearing that the same were made or induced by any promise or hope of benefit to accrue to him therefrom, are proper to be proved on his trial. Evidence in this case examined and held to sustain verdict.

(Syllabus by the court.)

APPEAL from District Court, Ada County.

Frank Martin and J. R. Wester, for Appellant.

The indictment is defective in that it does not charge murder. In order to charge murder in the first degree, it must necessarily allege that the killing was done unlawfully, willfully and with deliberation, premeditation and with malice aforethought. That in the absence of such allegation it is fatally defective and does not charge murder. (Idaho Rev. Stats., secs. 6560, 6562; *Leonard v. Territory*, 2 Wash. Ter. 381, 7 Pac. 872; *State v. Brown*, 7 Or. 198; *State v. Herrell*, 97 Mo. 105, 10 Am. St. Rep. 289, 10 S. W. 387; *Territory v. Evans*, 2 Idaho, 425, 17 Pac. 139; *People v. O'Callaghan*, 2 Idaho, 156, 9 Pac. 414.) It must be distinctly averred in the indictment that the deceased died of the wound alleged to have been inflicted by the defendant. (*State v. Connelly*, 39 Me. 78; 1 Wharton's Criminal Law, sec. 536; *Shepherd v. State*, 54 Ind. 25; *State v. Blair*, 69 Mo. 317; *People v. Lloyd*, 9 Cal. 55; *People v. Aro*, 6 Cal. 208, 65 Am. Dec. 503; *Littell v. State*, 133 Ind. 577, 33 N. E. 417; *State v. Locke*, 35 Ind. 419; *Howard v. State*, 67 Ind. 401.) The conclusion of an indictment is no part of the instrument. (*Shaffer v. State*,

Idaho, Vol. 4—34

22 Neb. 557, 3 Am. St. Rep. 274, 35 N. W. 384; *State v. McCormick,* 27 Iowa, 402; *Smith v. State,* 4 Neb. 277; *Hagan v. State,* 10 Ohio St. 459.) Where evidence is neither a part of the *res gestae* or the dying declarations of deceased, it is reversible error to admit them. If any testimony was illegally admitted, a new trial should be had. (*State v. Hunsaker,* 16 Or. 497, 19 Pac. 605; *Montag v. People,* 141 Ill. 75, 30 N. E. 337; *People v. McKeon,* 64 Hun, 504, 19 N. Y. Supp. 486; *Coleman v. People,* 58 N. Y. 555; *State v. Nolan,* 48 Kan. 723, 29 Pac. 568, 30 Pac. 486.)

Attorney General George M. Parsons, for the State.

Murder is defined by the statute as follows: "Murder is the unlawful killing of a human being with malice aforethought." (Rev. Stats., sec. 6560.) The degrees of the crime are fixed by the statute. (Rev. Stats., sec. 6562; *Madden v. State,* 1 Kan. 340; *Commonwealth v. Patterson,* 2 Met. 374; *People v. King,* 27 Cal. 507, 87 Am. Dec. 95; *In re Mansfield,* 106 Cal. 381, 39 Pac. 778.) Where a statute creating the offense is silent concerning the intent, no criminal intent need be alleged in the information for violation of the statute. (*Harding v. People,* 10 Colo. 387, 15 Pac. 727; *State v. Smith,* 17 R. I. 371, 22 Atl. 282; *People v. Butler,* 1 Idaho, 233, 234.) The sufficiency of a criminal pleading to be determined by statute. (Rev. Stats., sec. 7675.) "From the allegations of the indictment, the intent is manifest." (*People v. Davis,* 8 Utah, 418, 32 Pac. 670.) The law presumes that every man intends the natural and necessary consequences of his own acts. (*State v. Reed,* 3 Idaho, 754, 35 Pac. 706; *Commonwealth v. Hersey,* 2 Allen, 173, 179, 180; *People v. Davis* 8 Utah, 418, 32 Pac. 672; *Davis v. People of Utah,* 14 Sup. Ct. Rep. 328.) Our Penal Code declares: "No indictment is insufficient, nor can the trial judgment or other proceeding thereon be affected by reason of ·any defect, or imperfection in matter of form, which does not tend to the prejudice of a substantial right of the defendant upon its merits." (Rev. Stats., sec. 7687.) In determining the offense charged in the indictment, all parts of the instrument will be considered together, and if from the

whole it appears that the crime is sufficiently alleged, it will be sustained. (*Territory v. Evans,* 2 Idaho, 425, 17 Pac. 139; *People v. Dolan,* 9 Cal. 583; *People v. Nichols,* 34 Cal. 211; *People v. Swenson,* 49 Cal. 390; Wharton's Criminal Pleadings, sec. 760.) In giving judgment this court should disregard technical errors and defects. (Rev. Stats., sec. 8070; *People v. Butler,* 1 Idaho, 233, 234; *State v. Reed,* 3 Idaho, 754, 35 Pac. 706; *State v. Jorgenson,* 3 Idaho, 620, 32 Pac. 1129; *State v. Clark,* ante, p. 7, 35 Pac. 710.) The confessions of defendant made to Patterson and Basil were properly admitted in evidence; although the defendant was under arrest, the confessions were voluntarily made, and made without promise or inducement from the officers. The fact that the defendant was under arrest cuts no figure in the matter. (*McQueen v. State,* 94 Ala. 50, 10 South. 433, 444; *Hornsby v. State,* 94 Ala. 55, 10 South. 522, 525; *State v. Coella,* 3 Wash. 99, 28 Pac. 28, 30; *State v. Whitfield,* 109 N. C. 876, 13 S. E. 726; *People v. Redonda,* 44 Cal. 538.)

HUSTON, J.—The defendant was convicted of murder in the first degree, under the following indictment: "James A. Ellington is accused by the grand jury of said county of Ada, state of Idaho, upon their oaths, by this indictment, found this twenty-eighth day of December, A. D. 1894, of the crime of murder, committed as follows: The said James A. Ellington, on the twentieth day of December, A. D. 1894, at the said county of Ada, and state of Idaho, did unlawfully, willfully, feloniously, and of his deliberately premeditated malice aforethought, make an assault on one Charles Briggs, and a certain pistol, commonly called a 'revolver,' which then and there was loaded with gunpowder and one leaden bullet, and by him, the said James A. Ellington, had and held in his hands, he, the said James A. Ellington, did then and there unlawfully, willfully, feloniously and of his deliberately premeditated malice aforethought, shoot off and discharge at and upon the said Charles Briggs, thereby, and by thus striking the said Charles Briggs with the said leaden bullet, inflicting on and in the body of said Charles Briggs one mortal wound, of which said mortal

wound the said Charles Briggs thence continuously languished, until the twenty-fifth day of December, 1894, on which said twenty-fifth day of December, 1894, at said county, he, the said Charles Briggs, died. And so the said James A. Ellington did, in manner and form aforesaid, unlawfully, willfully, feloniously and of his deliberately premeditated malice aforethought, shoot, kill and murder the said Charles Briggs, contrary to the form, force and effect of the statutes in such cases made and provided, and against the peace and dignity of the state of Idaho."

It is claimed by counsel for appellant that this indictment is fatally defective, in that it does not allege specifically that "the killing was done unlawfully, willfully and with deliberation, premeditation and with malice aforethought." While, perhaps, it might be conceded that a hypercritical analysis of this indictment, under the strict rules of etymology, would develop some deviation from such rules, we are clearly of the opinion that under the provisions of section 7687 of the Revised Statutes of Idaho, which is as follows: "No indictment is insufficient, nor can the trial judgment, or other proceeding thereon be affected by reason of any defect or imperfection in matter of form, which does not tend to the prejudice of a substantial right of the defendant upon its merits"—the objections urged by counsel for the defendant cannot obtain. Counsel for defendant have urged their objections with exceptional zeal and ability, but we are mindful that our legislature has repeatedly reminded us that in the administration of the criminal law justice is not to be defeated through technicalities. Section 8236 of the Revised Statutes is as follows: "Neither a departure from the form or mode prescribed by this code in respect to any pleading or proceeding, nor an error or mistake therein renders it invalid, unless it has actually prejudiced the defendant or tended to his prejudice in respect to a substantial right." And, again, sections 7685 and 7686 are as follows:

"Sec. 7685. Words used in a statute to define a public offense need not be strictly pursued in the indictment; but other words conveying the same meaning may be used.

"Sec. 7686. The indictment is sufficient if it can be understood therefrom: 1. That it is entitled in a court having authority to receive it, though the name of the court be not stated; 2. That it was found by a grand jury of the county in which the court was held; 3. That the defendant is named, or, if his name cannot be discovered, that he is described by a fictitious name, with a statement that his true name is to the jury unknown; 4. That the offense was committed at some place within the jurisdiction of the court, except where the act, though done without the local jurisdiction of the county, is triable therein; 5. That the offense was committed at some time prior to the time of finding the indictment; 6. That the act or omission charged as the offense is clearly and distinctly set forth in ordinary and concise language, without repetition, and in such a manner as to enable a person of common understanding to know what is intended; 7. That the act or omission charged as the offense is stated with such a degree of certainty as to enable the court to pronounce judgment upon a conviction, according to the right of the case."

It is contended by appellant's counsel that the indictment does not state with sufficient certainty that deceased died from the effects of the wound inflicted by defendant. It seems to us that even a cursory examination of the indictment refutes this contention. We are not, as we have before said, called upon to go into a critical analysis of the language used; it is sufficient if it states in ordinary, plain and concise language the commission of the offense. "The object of pleading, in its application to criminal cases, is a statement of a crime imputed to the prisoner with such a particularity of circumstances only as will enable him to understand the charge, and prepare for his defense, and as will authorize the court to give the appropriate judgment upon conviction." (1 Archibald's Criminal Practice and Pleading, 884.) This would appear to have been the view entertained by our legislature in the enactment of the statutes above given. The supreme court of Idaho territory, in *People v. Ah Choy,* 1 Idaho, 317, says: "The definition given of 'murder' in the statute is 'the unlawful killing of a human being with malice aforethought, either expressed or im-

plied.' This definition includes both degrees of murder, and it is sufficient if the indictment charges the offense in the language of the statute defining it." This conclusion is supported by many decisions from the supreme court of California, from which state our statutes were taken. The degrees of murder are defined by our statute; and by section 7925 of the Revised Statutes of Idaho it is provided: "Whenever a crime is distinguished into degrees, the jury, if they convict the defendant, must find the degree of the crime of which he is guilty." How are the jury to find the degree? From the descriptive allegations in the indictment, or from the evidence on the trial? It seems to me the answer is unavoidable, as it is conclusive, that the degree of the crime is solely for the trial jury, and it is not requisite or essential that the words defining the degrees of murder should be set forth in the indictment to constitute a good indictment for murder in the first degree under our statutes. We cannot recognize the decision of the territorial supreme court of Idaho in the case of *People v. O'Callaghan,* 2 Idaho, 156, 9 Pac. 414, as a correct application of the law as given in our statutes. It must be admitted, we think, that a disposition on the part of some of our courts to give a strained latitude to technicalities in behalf of persons accused of crime has not only tended to make our courts, in the administration of the criminal law, an arena for the exhibition of professional acuteness and agility, but make us obnoxious to the charge of Lord Hale (2 Hale's Pleas of the Crown, 193) : "More offenders escape by the overeasy ear given to exceptions in indictments than by their own innocence, and many times gross murders, burglaries, robberies and other heinous and crying offenses escape by these unseemly niceties, to the reproach of the law, to the shame of the government and to the encouragement of villainy, and to the dishonor of God.

Error is claimed in the admission of certain testimony as to statements of deceased made to persons at or about the time of the shooting. The witnesses differ somewhat in regard to time, but it is only a matter of seconds. The facts as shown by the evidence are about as follows: There appears to have been a difficulty or dispute between deceased and defendant in regard

to money matters, defendant claiming that deceased owed him some thirty dollars, which was disputed or denied by deceased. On the day of the homicide, these parties met on Thirteenth street, in Boise City. Some words were passed in regard to the alleged indebtedness as testified by one or two of the witnesses, and then a shot was fired. After the first shot was fired, the parties came together, or "clinched"; and then two more shots were fired, and the defendant was seen to pull himself from deceased, or push deceased away from him, and fly. He had not gone more than one hundred or two hundred feet when one of the witnesses reached deceased. Witness asked deceased if he was hurt. "He said he was shot. I said: 'Who done the shooting?' He says: 'His name is Jim Ellington, a tramp who came up with me from California. He shot me, and has taken my watch.'" At this time defendant was running away, and was from one hundred and fifty to two hundred feet from the place where deceased was. Several witnesses reached that point at about the same time. The watch of deceased was gone, and the chain was hanging from his pocket. Several other witnesses arrived at about the same time, and testified to substantially the same facts. They differ as to time from half a minute to five minutes. The defendant's counsel object that the admission of the statements of the deceased made to said witnesses was error, the same not being a part of the *res gestae.* What is or is not of the *res gestae* is a matter that must be decided upon the facts of each case. There are no limits of time within which the *res gestae* can be arbitrarily confined. Where it is apparent that the statements of deceased were made at a time, in a manner and under circumstances which preclude any presumption that they were the result of consideration or design, their admission is proper. Every statement made by the deceased, and admitted in evidence, was in substance corroborated by the subsequent statements of defendant at the time and after his arrest. The killing was not denied, it was admitted, by defendant. The whole theory of the defense was self-defense. When asked by the officer who arrested him, "What did you shoot Briggs for?" defendant answered, "Well I was going to shoot the s—— of a b—— down to my size, so

I could handle him." The watch of deceased was found on
defendant at the time of his arrest. No weapons of any kind:
were found upon deceased, nor is there any evidence of his hav-
ing had a weapon at the time of the shooting. One witness.
(Mrs. Bower) says: "I saw a weapon of some kind in the hand
of the taller man [deceased]. I seen a weapon in the short
man's hand, I think it was. I didn't see any in the other man's
hand." This is all the evidence aside from that of defendant
supporting the contention that deceased was armed. The wit-
nesses who examined deceased immediately after the shooting;
testify that they found no weapons of any kind upon him. Dr.
Collister, the physician who examined deceased, testifies: "The
ball entered the back at the eleventh rib, fracturing the rib,
passing upward, fracturing the seventh rib. The ball entered
about three inches from the spine, to the left of the spine."
The defendant, in his testimony, it is true, gives a different
statement of the affair; but the jury seem to have given more
credence to the physical facts and the declarations of defend-
ant at the time of his arrest than the testimony of defendant
on the trial. It is quite apparent the defendant viewed the
matter very differently at the time of his arrest, and while his
victim was still living, from what he did when testifying under
the shadow of the gallows.

It is objected that the prosecution were allowed to recall cer-
tain witnesses to testify in regard to matters which it is claimed
were not strictly rebuttal. This is a matter entirely within
the discretion of the trial court, and is so made by statute. It
would most certainly be a denial of justice to refuse to allow
witnesses to be recalled on the part of a defendant on trial for
a capital offense merely because the matters in regard to which
they are to testify are not strictly rebuttal, although material,
and the same rule should apply to the state.

It is objected by appellant that there was error in the admis-
sion of testimony as to declarations made by defendant at the
time of his arrest. The grounds for this objection are various.
In their brief, counsel for appellant claim that the general rule
is "that confessions made by one while under arrest, who is un-
warned or uncautioned, and which admissions do not lead to the

discovery of some fact or circumstance connecting or tending to connect defendant with the crime, are illegal testimony, and will necessitate a reversal." The application of this rule to the case under consideration is not glaringly apparent. Appellant's counsel cite in support of this contention three authorities, viz.: *Musgrave v. State,* 28 Tex. App. 57, 11 S. W. 927; *Davis v. State* (Tex. Cr. App.), 23 S. W. 687; *Jackson v. State,* 29 Tex. App. 458, 16 S. W. 247. These are all cases from the court of appeals of Texas. The case of *Musgrave v. State* was an indictment for larceny. The point relied upon by appellant herein is thus stated in the syllabus of said case: "Defendant was approached by persons who, without his knowledge, were looking for a stolen mare. They asked defendant where the mare was which 'you and M. had,' and defendant informed them. The mare was found at the place as a result of defendant's statement. Held, that defendant's statement was not admissible against him as a confession of theft, as the statement in no way conduced to establish his guilt." The zeal and enthusiasm of counsel may be able to discover wherein this case supports the contention in the case at bar, but we confess it is beyond our ken. In the case of *Jackson v. State* (Tex. App.), 16 S. W. 247, the defendant was held for murder in the killing of his child, some three months old. The defendant, while under arrest, made a statement or confession to the constable having him in charge, after the constable had told him "it would be better for him to tell the truth." The court says: "The voluntary statement was made in strict compliance with the statutory provisions (Tex. Code Cr. Proc., arts. 261, 262), and was legitimate evidence as such statement." In the case of *Davis v. State* (Tex. Cr. App.), 23 S. W. 687, the syllabus of the case, which is borne out by the text of the decision, is as follows: "The statements, made by one while in jail on the charge of burglary, that a certain article with which the building was broken into, and a certain article taken therefrom, would be found in a certain place under a building, is, in connection with evidence that they were so found, admissible against him, under the Code of Criminal Procedure of Texas, article 750, making the confession of one in confinement admissible, where,

in connection therewith, he made statements of facts that are found to be true, which conduce to establish his guilt." Aside from the fact that all of these decisions were predicated upon a statute peculiar to the state where they were made, we are unable to see how they can be claimed to support the position of appellant herein. The whole theory of appellant seems to be based upon an assumption of facts entirely unsupported by the evidence as shown by the record. The proposition of counsel that the deceased was the aggressor in the conflict which resulted in his death has no other support than the testimony of the defendant on the trial, and is not only in conflict with the voluntary statements of defendant at the time of his arrest, but is completely overthrown by the evidence of numerous witnesses, as well as by the indisputable physical facts proven on the trial.

Several objections are presented to the instructions given and refused by the trial court. We have examined them all with the care and scrutiny which the importance and solemnity of the case demand, and we are convinced that the record shows no error prejudicial to any rights of the defendant.

Counsel for the defendant have presented his case with most commendable zeal and persistency, and defendant's rights under the law have been fully and ably protected, but we are unable to find anything in the record that will justify us in disturbing the verdict and judgment of the district court.

The judgment of the district court is affirmed, and the cause remanded for further proceedings.

Morgan, C. J., and Sullivan, J., concur.

### ON PETITION FOR A REHEARING.

HUSTON, J.—The petition for a rehearing in this case has been carefully examined. It presents no new questions, but is a mere reiteration of the case made on the hearing. To go over the same ground covered in the decision of the court would avail nothing. We appreciate the zeal of counsel in a case of this kind, but we can only declare the law as we understand it. Petition denied.

Morgan, C. J., and Sullivan, J., concur.