429 P.2d 836

**James L. CAREY, Petitioner-Appellant,**

v.

**STATE of Idaho, Defendant-Respondent.**

No. 9887.

Supreme Court of Idaho.

June 30, 1967.

Ryan & Speropulos, Weiser, for appellant.

Allan G. Shepard, Atty. Gen., M. Allyn Dingel, Jr., Sp. Asst. Atty. Gen., Boise, Frank H. Joseph, Prosecuting Atty., Weiser, for respondent.

McQUADE, Justice.

A preliminary hearing in the present action was held on February 26, 1966, before the probate judge of Washington County, Idaho, to consider a charge of murder in the first degree alleged in a complaint accusing appellant, James L. Carey, of willfully, unlawfully, feloniously, and deliberately with premeditation and malice aforethought and the intent to kill and murder and of so killing and murdering on December 25, 1965, Jim Alexander, a deputy sheriff of Washington County, with a .22 caliber pistol. Finding a public offense had been committed and sufficient cause to believe the defendant guilty thereof, the probate judge ordered appellant to be held to answer such charge in the district court. Appellant, arguing that no evidence consistent with such a finding had been introduced at the preliminary hearing, petitioned for a writ of habeas corpus. The writ issued, but after a hearing on May 2, 1966, the district court found sufficient evidence in support of the findings of the committing magistrate, and

thereupon entered an order quashing the writ. This is an appeal from that order.

The transcribed testimony of the preliminary examination establishes the following facts.

The homicide occurred on Christmas night, 1965, in the K.C. Club, a Cambridge, Idaho, bar and restaurant of which the appellant was part-owner. On the club premises, appellant had living quarters which apparently could be entered from the barroom.

Shortly after ten o'clock p.m., the victim, dressed in ordinary street clothes, entered the barroom. Whether he was then on police duty is not shown; however, appellant, it is implied, and all the witnesses then in the club were familiar with the deputy and knew him to be a law enforcement officer. Alexander ordered a coke, sat at the bar to drink it, and engaged in small talk with three men who had been seated there when he came in, Tom Hubbard, Don Beigh, and Jim Wiggins. Besides these four, appellant and his partner in the club enterprise, Agnes Knight, were present, and also seated at the bar.

The room was dimly lit, apparently to accentuate bulbs on a Christmas tree standing in a corner. "It was dark * * * the room was lit but it is [sic] dark—that night they had Christmas tree lights on and it was darker than usual," Tom Hubbard testified. After the shooting, he said, "You couldn't tell" what type of gun had been used because of the darkness.

The following events, which immediately preceded the shooting, all happened within approximately five to ten minutes after the victim had entered the club. After the victim sat down and ordered a coke, he started to chat with some of the people at the bar. Soon appellant began "mumbling and using a little vulgar language," a witness said, whereupon the victim asked him (not in the exact words)—are you talking to me? Appellant replied, in effect, —yes. The victim then told appellant that he would have to arrest him for disturbing the peace, and immediately stood and began

walking towards appellant. No witness observed whether the victim motioned towards or was wearing a pistol. When the victim had reached a point approximately ten feet from him, appellant drew a .22 caliber long rifle Colt automatic pistol and fired several shots in rapid succession. Bullets entered the body of the victim who slumped to the floor and lay there motionless.

The only doctor who viewed the corpse said that Alexander was dead when he first examined the body at midnight; no witness saw the deputy alive after he had been shot. How many bullets entered Alexander was not precisely established; a mortician, however, said the left arm had two wounds, one outside and one inside, the left chest had two and there were two in the back, between the shoulder blades.

The evidence suggests that appellant had consumed a fair amount of beer on the day of concern, but the record contains no estimates of the precise quantity imbibed or the time span involved, and does not clearly show the alcohol's effect on appellant's mental condition. Garth Nelson, a "good friend" of appellant's "for quite some time," testified that between 5:00 and 8:30–9:00, all p.m., Christmas day, appellant's "voice was thick" and "he had a stagger to him," and Nelson "would say he [appellant] was drunk." During those three and one-half to four hours, Nelson testified, appellant had a beer in his hands at all times. However, asked if appellant, by 8:30 to 9:00 p.m., when Nelson left the bar, "had reached that point where he was so drunk that he was having a hard time to express his thoughts," Nelson replied, "No. Not to me. He didn't seem it to me."

Thomas Hubbard testified that when he had entered the club, ten minutes before the shooting, appellant was "talking back and forth to Agnes [Knight]." Hubbard said he did not talk to appellant and did not know how much beer appellant had consumed or whether appellant was drunk. Hubbard also testified that after the shoot-

ing appellant stood up and remained immobile for some time, then walked out and quietly surrendered himself to the sheriff who was standing outside the club. Although the ground was icy, Hubbard did not see appellant slip. He said too that appellant then put his hands against a wall, when so ordered by the sheriff, and stood that way for at least fifteen to twenty minutes.

No scientific tests were administered to determine the amount of alcohol in appellant's blood.

Appellant does not contest the sufficiency of evidence introduced at the preliminary hearing to establish that he shot the victim; his argument is limited to whether the evidence supports a preliminary finding that the shooting was accompanied by a deliberate and premeditated intent to kill. In this regard appellant contends the evidence conclusively establishes that he was drunk at all pertinent times and that the killing spontaneously happened. Thus, appellant claims, the record is absolutely inconsistent with and cannot support a preliminary finding of sufficient evidence to hold him to answer a charge of deliberate and premeditated murder.

Habeas corpus is a proper means to test the validity of a magistrate's order of commitment, I.C. § 19–4215(7), Martinez v. State, 90 Idaho 229, 409 P.2d 426 (1965), cf. Idaho Const., art. 1, § 8, but before the accused may be discharged it must be shown that he "has been committed on a criminal charge without reasonable or probable cause", I.C. § 19–4215(7), and the magistrate's "discretion should not be disturbed except in a clear case of abuse thereof." In re Levy, 8 Idaho 53, 54, 66 P. 806 (1901); see Martinez v. State, supra.

Regarding the evidentiary showing necessary to support a magistrate's order of commitment, the defendant must be held to answer an offense charged if "it appears from the [preliminary] examination that a public offense has been committed, and there is sufficient cause to believe the defendant guilty thereof". I.C. § 19–815. Under this section of the statute, the minimum standard of proof is less stringent than the conviction judgment criterion of beyond a reasonable doubt, Martinez v. State, supra; State v. Layman, 22 Idaho 387, 125 P. 1042 (1912); In re Squires, 13 Idaho 624, 92 P. 754 (1907); State v. Bond, 12 Idaho 424, 86 P. 43 (1906), for sufficient to satisfy the standard is "such evidence as would lead a reasonable person to believe the accused party has probably or likely committed the offense charged," Martinez v. State, supra, 90 Idaho at 232, 409 P.2d at 427. Thus, "[t]he state is not required to produce all of its evidence at a preliminary examination," but only "enough [evidence] to satisfy the committing magistrate that a crime has been committed and that there is reasonable or probable cause to believe the accused committed it". Ibid. See In re L. P. Sly, 9 Idaho 779, 76 P. 766 (1904); In re Squires, supra; cf. Ex Parte Seyfried, 74 Idaho 467, 264 P.2d 685 (1953); State v. Layman, supra.

The pertinent difference between first degree murder as here charged and second degree murder is that, though "malice aforethought" is an essential element of each, I.C. § 18–4001,[1] first degree murder must also be "perpetrated by * * willful,[2] deliberate and premeditated killing". I.C. § 18–4003. The distinction thus probes the killer's intent, which of course

---

1. "18–4001. *Murder defined.*—Murder is the unlawful killing of a human being with malice aforethought."

2. "18–4003. *Degrees of Murder.*—All murder which is perpetrated by means of poison, or lying in wait, torture, or by

any other kind of willful, deliberate and premeditated killing, or which is committed in the perpetration of, or attempt to perpetrate arson, rape, robbery, burglary, kidnapping or mayhem, is murder of the first degree. All other kinds of murder are of the second degree."

requires interpretation of the circumstances surrounding the murder.

■■■ The jury decides questions of fact in criminal trials, I.C. § 19–2131; State v. Blacksten, 86 Idaho 401, 407, 387 P.2d 467, 470 (1963). The jury also must find the degree of crime committed whenever the crime charged is distinguished into degrees, I.C. § 19–2311; People v. Dunn, 1 Idaho 74 (1886); State v. Phinney, 13 Idaho 307, 89 P. 634, 12 L.R.A.,N.S., 935 (1907); cf. State v. Goodmiller, 86 Idaho 233, 386 P.2d 365 (1963) and its finding of degree will be upheld if supported by substantial evidence. State v. Hargraves, 62 Idaho 8, 107 P.2d 854 (1940).

■■■ Voluntarily induced intoxication of the accused at the time he commits a crime does not render his wrongful act "less criminal." I.C. § 18–116.[3] Drunkenness may be probative of the accused's mental state at the moment of the criminal act, however, and so the trier of fact may consider it "in determining the purpose, motive or intent with which he [the accused] committed the act" if the "existence of any particular purpose, motive, or intent is a necessary element" of "any particular species or degree of crime." Ibid. The proper inquiry therefore is whether the accused was so intoxicated as to create a reasonable doubt of his deliberate and premeditated intent to kill, I.C. § 18–116; State v. Clokey, 83 Idaho 322, 364 P.2d 159 (1961); see Wharton, Homicide, §§ 546–547 (3d ed. 1907); S. Glueck, Mental

Disorder and the Criminal Law 201 (1927); cf. State v. Johnson, 74 Idaho 269, 261 P.2d 638 (1953); Model Penal Code, § 2.08(1) (Proposed Official Draft 1962).[4] It is for the jury to assess intoxication's influence on the accused's intent to kill. I.C. § 18–116; State v. Clokey, supra; State v. Snowden, 79 Idaho 266, 313 P.2d 706 (1957); 3 Wharton, Criminal Evidence § 970 (12th ed. 1955); cf. State v. Johnson, supra; State v. Baldwin, 69 Idaho 459, 208 P.2d 161 (1949); State v. Sprouse, 63 Idaho 166, 118 P.2d 378 (1941).

■■■ Appellant contends also that the circumstances of the murder, as elicited on the preliminary hearing, show that it happened too spontaneously to have been premeditated. However, "[t]here need be no appreciable space of time between the intention to kill and the act of killing— they may be as instantaneous as successive thoughts of the mind." State v. Shuff, 9 Idaho 115, 126, 72 P. 664, 668 (1903). See State v. Snowden, supra.

■■■ The Idaho Constitution guarantees an accused's right to a preliminary hearing before a magistrate and, afterwards, to be prosecuted by information or the presentment or indictment of a grand jury. Idaho Const. art. 1, § 8. If prosecuted by information, an accused may be convicted of no greater criminal offense or degree of offense than one the essential elements of which are charged in the information. See I.C. §§ 19–1303 and 19–1411;[5] People v.

---

3. "18–116. *Intoxication no excuse for crime.*—No act committed by a person while in a state of voluntary intoxication is less criminal by reason of his having been in such condition. But whenever the actual existence of any particular purpose, motive, or intent is a necessary element to constitute any particular species or degree of crime, the jury may take into consideration the fact that the accused was intoxicated at the time, in determining the purpose, motive or intent with which he committed the act."

4. See generally Annot., Modern Status of the Rules as to Voluntary Intoxication as Defense to Criminal Charge. 8 A.L.R. 3d 1236 (1966); 1 Wharton, Criminal

Law & Procedure §§ 44–45 (12th ed. 1957) ("that the design to kill is conceived in a mind excited by strong drink is immaterial." Id., § 44 at 101); 1 Wharton, Criminal Evidence §§ 32 and 214 (12th ed. 1955); 2 Underhill, Criminal Evidence §§ 470–471 (5th ed. 1957); 1 Conrad, Modern Trial Evidence § 59 (1956); Paulsen, Intoxication as a Defense to Crime, 1961 U.Ill.L.F. 1; Note, Intoxication as a Criminal Defense, 55 Colum.L.Rev. 1210 (1955).

5. "13–1303. *Statement of offense charged.* —The offense charged in all informations shall be stated with the same fullness and precision in matters of substance as is required in indictments in like cases,

O'Callaghan, 2 Idaho 156, 9 P. 414 (1886); cf., State v. Ellington, 4 Idaho 529, 43 P. 60 (1895); see also State v. McGreevey, 17 Idaho 453, 105 P. 1047 (1909). To charge murder in the first degree by reason of deliberation and premeditation, the information must contain allegations that the accused did act deliberately and with premeditation. People v. O'Callaghan, supra; cf. State v. Petty, 73 Idaho 136, 248 P.2d 218 (1952); State v. McMahan, 57 Idaho 240, 65 P.2d 156 (1937). The jury nevertheless, after trial may find the defendant guilty of a lesser offense, or degree of offense which is necessarily included in that charged by the information, I.C. § 19–2312,[6] State v. Anderson, 82 Idaho 293, 352 P.2d 972 (1960); State v. Livesay, 71 Idaho 442, 233 P.2d 432 (1951) (charge of first degree murder, conviction of second degree murder); In re Alcorn, 7 Idaho 101, 60 P. 561 (1900); State of Alcorn, 7 Idaho 599, 64 P. 1014 (1901) (charge of second degree murder, conviction of manslaughter); State v. Goodmiller, 86 Idaho 233, 386 P.2d 365 (1963) (charge of first degree burglary, conviction of second degree burglary); see State v. Ellington, supra. If the jury has "reasonable ground of doubt in which of two or more degrees he [the defendant] is guilty, he can be convicted of the lowest of such degrees only", I.C. § 19–2105, and the judge upon request must so instruct the jury. State v. Hunter, 55 Idaho 161, 39 P.2d 301 (1934).

Upon trial, appellant will have full opportunity to present whatever competent evidence is relevant to his state of mind at the time of the killing. The record of the preliminary hearing does not negate the probability that he shot his victim deliberately and with premeditation.

Order affirmed.

TAYLOR, C. J., and SMITH, McFADDEN and SPEAR, JJ., concur.

---

and in all cases defendant or defendants shall have the same rights as to proceedings therein as he or they would have if prosecuted for the same offense upon indictment."

"19–1411. *Certainty required of indictment.*—It must be direct and certain as it regards:

1. The party charged.
2. The offense charged.

3. The particular circumstances of the offense charged, when they are necessary to constitute a complete offense."

6. "19–2312. *Conviction of included offense.*—The jury may find the defendant guilty of any offense, the commission of which is necessarily included in that with which he is charged in the indictment, or of an attempt to commit the offense."