456 P.2d 254

**Edward Albert KING, Plaintiff-Appellant,**

v.

**STATE of Idaho, Defendant-Respondent.**

**No. 9952.**

Supreme Court of Idaho.

June 19, 1969.

Rehearing Denied July 15, 1969.

John L. Runft, Boise, for appellant.

Robert M. Robson, Atty. Gen., and Klaus Wiebe, Asst. Atty. Gen., Boise, Hugh C. Maguire, Pros. Atty., Bannock County, Pocatello, for appellee.

McQUADE, Justice.

This was a habeas corpus proceeding in which the evidence tended to show the following facts. On July 16, 1964, the petitioner, Edward Albert King, was arrested

in connection with an attempted burglary in which a law officer was killed. On July 17, 1964, a criminal complaint charging petitioner and five others with first degree murder was signed. Records of the justice court and the testimony of R. Don Bistline, justice of the peace, shows that petitioner was arraigned on July 17, 1964. However, petitioner testified at his habeas corpus hearing that he was not arraigned until July 20, 1964.

At arraignment petitioner was advised of the charge against him and of his right to a preliminary hearing and to the assistance of counsel provided by the State. Petitioner requested a continuance to procure his own counsel. On July 20, 1964, and again on July 22, 1964, petitioner requested more time to procure his own counsel, but petitioner failed to do so. Though there is some confusion in the record, it appears from petitioner's testimony at his habeas corpus hearing that the justice of the peace did not refuse to offer assistance of counsel to petitioner unless he waived his right to a preliminary hearing. Rather, the justice apparently stated that counsel could be appointed through the district court for purposes of a preliminary hearing in justice court.

In any event, no preliminary hearing was held because on July 23, 1964, Judge Oliver, a district judge, issued an order for drawing a special grand jury; on July 24, 1964, the grand jury was drawn; on August 6, 1964, the grand jury returned an indictment against petitioner and five others for first degree murder. All of these actions were taken without notice to petitioner. On August 10, 1964, petitioner was arraigned in district court on the indictment and requested the assistance of court-appointed counsel. The court appointed B. A. McDevitt to represent four of the defendants, including petitioner, in their defense against a charge of first degree murder.

As to petitioner's plea of guilty to the charge of second degree murder entered on January 4, 1965, the day before trial was set to begin, petitioner states in his application for habeas corpus the following:

"THE DAY BEFORE THE PETITIONERS GRAND [Sic] JURY WAS TO BE SELECTED HIS ATTORNEY CAME TO SEE HIM AND THE OTHER CO-DEFENDANTS IN THE COUNTY AND TOLD HIM THAT THIS WAS HIS LAST CHANCE TO PLEAD GUILTY TO A LESSER CHARGE OF SECOND DEGREE MURDER AND IF HE WOULD DO THIS THE PROSECUTOR WOULD HAVE ALL OTHER CHARGES DROPED (TWO COUNTS OF GRAND LARCENY) AND HE WOULD RECEIVE A LIFE SENTENCE AND AS SUCH WOULD BE ELEGIBLE FORE PAROLE IN TEN YEARS AND IF THE PETITIONER DID NOT DO THIS HE (THE PROSECUTOR) WOULD SEEK THE DEATH PENELTY AND IF HE DID NOT GET THAT HE WOULD PROSECUT HIM ON THE TWO OTHER CHARGES AND WITH THE TWO OTHER CONVICTIONS HE WOULD PROSECUTE THE PETITIONER AS A PRESISTENT VIOLATER THE PETITIONER UNDER THIS PRESSURE COULD DO NOTHING BUT PLEAD GUILTY TO THE LESSER CHARGE AND TAKE HIS LIFE SENTENCE BUT EVEN THIS WAS CHANGED AFTER 'CHOPPING OUT' HE WAS NOT GIVEN WHAT HE WAS PROMISED HE WAS GIVEN A SIXTY YEAR SENTENCE WHICH MAKES HIME ELIGIBLE FOR PAROLE IN TWENTY YEARS, IT IS MY CONTNTION THAT THIS PRESSURE TO GET ME TO PLEAD GUILTY AND THE NOT GETTING WHAT I WAS PROMISED IS A VIOLATION OF THE 14 AMENDMENT WHICH GUARENTIES DUE PROCESS OF LAW."

In this respect, petitioner stated that he and the other four defendants were allowed one hour to come to a decision rath-

er than "several days" as stated in a letter from their counsel some five months after the event.

At the habeas corpus hearing, petitioner sought to subpoena his attorney for the purpose of exploring these matters, but was unable to do so because the attorney was in Europe. Thus, petitioner was unable to submit further evidence upon prosecutorial threats or promises made to induce a plea of guilty. Nor was a transcript available for the purposes of determining whether or not the court confused the identity of petitioner at sentencing and whether petitioner's counsel stated that petitioner had been an orphan ward of the court and had been in and out of prison all his life when in fact petitioner had had only one arrest on a "CCW" charge (carrying a concealed weapon?) and no convictions.

On October 3, 1966, the district judge quashed petitioner's writ of habeas corpus, finding that petitioner had been ably represented by counsel and had voluntarily pleaded guilty. Petitioner thus was remanded to the custody of the warden of the state penitentiary.

■ We note preliminarily that appellant assigns error to the district court's finding that there was no violation of petitioner's right to due process of law where no notice was given to petitioner regarding the calling and impaneling of the grand jury. No authority is cited for this proposition and no argument is advanced in support of the contention. We are aware of no provision of law requiring that such notice be given to a prospective defendant. I.C. § 19–1002(2) states as a ground for challenging a grand jury panel "[t]hat notice of the drawing of the grand jury was not given." However, this provision refers to I.C. § 2–402, which requires the clerk of the district court to give notice of the drawing to the sheriff and the probate judge, not to prospective defendants. Thus, we find no merit in this contention.

Appellant makes several major assignments of error which we view as falling into four general categories. The first two of these categories deal with an alleged denial of assistance of counsel contrary to the requirements of the sixth amendment to the United States Constitution. Appellant first argues that we must reverse the decision below because appellant was without counsel until after he was indicted by the special grand jury. Appellant argues that all stages of a capital case should be viewed as "critical" for the purposes of the sixth amendment without the necessity of showing specific prejudicial effects resulting from an absence of counsel. Alternatively, appellant argues that certain specific prejudicial effects were indeed created by the absence of counsel and that those effects require a reversal.

However, we believe these two contentions are adequately answered by the record of the proceedings below as emphasized by the State. The record shows that the justice court offered appellant the assistance of court-appointed counsel for the purposes of a preliminary hearing. Appellant alleged in his petition that the justice court required him to waive his right to a preliminary hearing before counsel would be appointed. However, at the habeas corpus hearing below, the district judge specifically inquired into this allegation as follows:

"Q. I am not interested in the exact words, I am asking you [appellant] if you will state under oath that the justice, Mr. Bistline, told you that you had to waive your preliminary hearing before you could get an attorney?

"A. No."

Appellant further stated that he did not waive his right to a preliminary hearing and that the justice gave him extra time to procure his own counsel. It thus appears that the State did not deny appellant assistance of counsel.

■ For this reason, certain of the allegedly prejudicial effects created by the absence of counsel were not imposed upon appellant through illegal State action but rather arose from circumstantial delay cre-

ated by appellant's choice to refuse court-appointed counsel and seek his own private counsel. Moreover, certain of the alleged specific prejudicial effects cannot be viewed as rising to the level of a deprivation of the constitutional right to the assistance of counsel under the sixth amendment. It is true that the police took numerous incriminating statements from appellant while he was in custody on a first degree murder charge and without counsel. These statements, if taken in contravention of *Escobedo* rights could have been excluded from evidence which might have been used to establish appellant's guilt at trial. However, the cases cited by appellant[1] are not authority for the proposition that the mere acquisition of incriminating statements requires reversal of a conviction. As we stated in State v. Reyna,[2] these cases establish an essentially exclusionary rule applicable to the fruits of illegal interrogation. If no trial is held to establish a defendant's guilt or if none of the incriminating evidence is used against a defendant at trial (either because the prosecution does not choose to use it or because the defendant succeeds in excluding it), then a defendant's constitutional right to the assistance of counsel is not infringed. Thus, we conclude that the absence of counsel does not in itself require reversal.

A plea of guilty "shown to have been unfairly obtained or given through ignorance, fear or inadvertence"[3] will not withstand judicial scrutiny. If a guilty plea is induced by some form of deception or threat by officers of the state or government, the plea may be collaterally attacked on habeas corpus.[4]

In his petition, appellant alleged that the day before trial was set to begin his attorney visited him in jail and conveyed the last offer of the prosecutor to accept a plea of guilty. The attorney allegedly told appellant that if he pleaded guilty, the prosecutor would drop all other charges and arrange a life sentence with parole eligibility in ten years. If he did not plead guilty, the attorney allegedly said, the prosecutor would seek the death penalty and prosecute appellant on two other charges and with those convictions would prosecute appellant as a persistent violator.

Appellant contended that these communications by the prosecutor through defense counsel induced him to plead guilty and to accept an alleged promise of life sentence with parole eligibility in ten years. This alleged promise of a life sentence was not kept since appellant received a sixty-year sentence. Moreover, petitioner alleged that his counsel gave the sentencing judge erroneous information about his past record which caused him to receive an unduly harsh sentence.

The district court below rejected these allegations because they were "not in any way supported nor [sic] corroborated."[5] Thus, the court found that appellant's plea of guilty was voluntary. However, this conclusion ignores the fact that appellant attempted without the aid of counsel to corroborate these allegations by examining his former counsel and producing a transcript of the proceedings at which he

1. Escobedo v. Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964); Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963).

2. 92 Idaho 669, 672, 448 P.2d 768, 765 (1968).

3. Kercheval v. United States, 274 U.S. 220, 224, 47 S.Ct. 582, 71 L.Ed. 1009 (1927).

4. Austin v. State, 91 Idaho 404, 422 P.2d 71 (1966); Goff v. State, 91 Idaho 36, 415 P.2d 679 (1966); Machribroda v. United States, 368 U.S. 487, 82 S.Ct. 510, 7 L.Ed.2d 473 (1962); Shelton v. United States, 356 U.S. 26, 78 S.Ct. 563.

2 L.Ed.2d 579 (1958); Von Moltke v. Gillies, 332 U.S. 708, 68 S.Ct. 316, 92 L.Ed. 309 (1948); Waley v. Johnston, 316 U.S. 101, 62 S.Ct. 964, 86 L.Ed. 1302 (1942); Smith v. O'Grady, 312 U.S. 329, 61 S.Ct. 572, 85 L.Ed. 859 (1941); Walker v. Johnston, 312 U.S. 275, 61 S.Ct. 574, 85 L.Ed. 830 (1941); Kercheval v. United States, note 3, supra; cf. State v. Lawrence, 70 Idaho 422, 220 P.2d 380 (1950); State v. Poglianich, 43 Idaho 409, 252 P. 177 (1927); State v. Raponi, 32 Idaho 368, 182 P. 855 (1919).

5. Findings of Fact XIV.

pleaded guilty and was sentenced. Appellant failed in this effort because his former counsel was said to have been in Europe and unavailable for subpoena. Also, the habeas corpus hearing was continued for the purpose of procuring a transcript of the proceedings in Bannock County which would illuminate certain portions of the criminal process about which no clear and reliable evidence was available. This transcript was never produced because the court reporter had retired, though it was not impossible for that reason to produce it. These two failings were not appellant's responsibility, but they seriously prejudiced his efforts to corroborate his allegations.

Finally, appellant contends that the representation of four defendants in a capital case by one attorney, even though the single attorney be of the highest caliber, denies effective assistance of counsel in view of the serious conflicts of interest among the defendants inherent in such a situation. The State replies that such representation is effective enough assistance of counsel for the purposes of proceedings ending in a plea of guilty before trial though it would fall short of effective assistance of counsel at trial.

■■ We do not choose to lay down a hard and fast rule on this matter. However, certain considerations cannot be ignored. Because a guilty plea is a conclusive pleading which forms the entire basis for conviction, the understanding or ignorance of an individual accused of the true nature and full consequences of the plea becomes highly critical. Second, when one accused person is represented by counsel who also represents three co-defendants on the same charge, it is less likely that the individual accused will receive the kind of assistance of counsel which would discriminate between individual degrees of involvement in the alleged crime and their perhaps different legal consequences. These are matters about which an accused layman knows little, and unless he is fully and effectively informed he may make a thought-

less plea because it is preferable to the prospect of an imposition of the death penalty. Thus, the type of representation of counsel afforded appellant in the prior proceedings as shown by this record is quite relevant to the question whether the guilty plea was made voluntarily and understandingly.

■ We consider that appellant's allegations bring this case within the principles applied in the *Austin* and *Goff* cases, supra. For these reasons, we reverse the decision below quashing the petition for a writ of habeas corpus and order that appellant's petition be reconsidered as an application for post-conviction relief under the Uniform Post-Conviction Procedure Act, I.C. §§ 19–4901 to 19–4911 (Supp. 1967). We further instruct that at the evidentiary hearing appellant be given full opportunity to present all the evidence he believes might corroborate his allegations.

As further aid to the district court in its reconsideration to appellant's petition, we note several points concerning the fact that appellant was sentenced to sixty years in prison. On a prior appeal to this Court, we said that

"[i]t cannot be said as a matter of law that a sixty year sentence is a greater sentence or imposes a greater penalty than does a sentence for life, and hence the imposition of a sixty year sentence, instead of a sentence for life is within the statutory limitations [of I.C. § 18–4004]."[6]

It was thus held that the imposition of such a sentence constituted neither an abuse of discretion by the trial court nor cruel and unusual punishment.

■ In this respect, however, appellant's petition on this appeal raises a different issue, namely, the proper interpretation of such a sentence in relation to the parole statutes as part of an alleged bargain made to induce a guilty plea. I.C. § 20–223 provides in pertinent part:

"*Parole, rules and regulations governing —Offenses not parolable.*—The state

---

6. King v. State, 91 Idaho 97, 98, 416 P.2d 44, 45 (1966).

board of correction shall have the power to establish rules and regulations under which any prisoner * * * may be allowed to go upon parole outside the penitentiary but to remain while on parole in the legal custody and under the control of the board and subject to be taken back into confinement at the direction of the board; *provided, however, that no person serving a life sentence in the state penitentiary shall be eligible for release on parole until he has served at least ten years. [And provided further] that no person serving sentence in the state penitentiary for * * * murder in the second degree shall be released on parole before he has served at least one-third of his sentence. * * *"* (Emphasis added).

This statute, when construed together with the two provisos quoted above, expresses an intent by the legislature: (1) to grant parole eligibility to prisoners serving the maximum sentence of life imprisonment after ten years; (2) to grant parole eligibility to prisoners serving lesser sentences for certain other crimes after an amount of time equal to one-third the sentence. Since the maximum punishment for second degree murder under I.C. § 18–4004 is life imprisonment, the legislature could not have intended to sanction a denial of parole eligibility for more than ten years of a sentence in any case. Thus, all defendants sentenced to less than life imprisonment become eligible for parole after ten years or less. Stated differently, sentences of thirty years or more must be treated for purposes of parole eligibility as effective life sentences.

In this case, appellant's sixty-year sentence must be treated for parole purposes as an effective life sentence, and therefore he will be eligible for parole after serving ten years of the sentence. Thus, if the court which sentenced appellant failed to carry out the precise terms of the alleged plea bargain in this case, nonetheless we hold that the sentence now conforms to what appellant claims he expected to receive after his plea of guilty. We can no longer find that appellant's complaint in this regard is premature.[7]

McFADDEN, C. J., SPEAR, J., and BEEBE, D. J., concur.

PRATHER, District Judge (concurring specially).

Petitioner contends his plea of guilty was obtained by coercion when the prosecutor offered to accept a plea to second degree murder and dismiss other charges. It should be noted that petitioner's allegations are that the day before trial his own attorney told him it was his last chance to plead guilty to a lesser charge; that if he would plead guilty to second degree murder (he was charged with first), the prosecutor would dismiss two charges of grand larceny and that if he did not so plead the prosecutor would seek the death penalty and the two other charges and also charge defendant as a persistent violator.

Assuming the truth of such allegations, the petitioner is not entitled to relief. Such communication from a prosecuting attorney to a defense attorney, relayed by the defendant attorney to a defendant does not constitute coercion that will vitiate a plea of guilty. If the situation were reversed and the prosecutor had made such an offer to the defendant's attorney and he had not communicated it to the defendant and the defendant was thereafter convicted of first degree murder and sentenced to hang, I have no doubt that the conviction would be reversed because of incompetency of defendant counsel in failing to relay the offer to him. Thus, if we hold that such communication can be coercion, all defense counsel are faced with an impossible dilemma. If they communicate the prosecutor's offer, any following plea of guilty is tainted by coercion. If they do not communicate the offer and their client is convicted of a crime greater than that to which the

---

7. See Peyton v. Rowe, 391 U.S. 54, 88 S.Ct. 1549, 20 L.Ed.2d 426 (1968) and I.C. § 19–4901(3), (5) and (6) (Supp. 1967).

prosecutor offered to accept a plea, then defense counsel have exposed themselves to charges of incompetency for failing to relay the offer. Likewise, the prosecutor would face an impossible situation. He could then never make any offer to a defendant's attorney to accept a plea to a lesser charge than that in the information or indictment because to do so would make him guilty of coercing a plea from the defendant.

I hold therefore that when a defendant is solely represented by competent counsel, offers to accept a plea to a lesser offense than that charged or to pursue the prosecution for a greater penalty or upon other charges, which are communicated by a prosecuting attorney to the defendant's attorney and are in turn related by defendant's attorney to defendant, do not constitute coercion which taints a plea of guilty.

This case, upon the question of coercion, should be clearly distinguished from those cases where a defendant, alone and unrepresented, is approached directly by the prosecuting attorney or other law enforcement official such as in the *Austin* and *Goff* cases, supra.

The most serious question presented herein is the representation of four co-defendants charged with commission of the same acts charged against petitioner.

As the majority states, the understanding or ignorance of an individual defendant of the true nature and full consequences of his plea of guilty is very critical and when one accused person is represented by counsel who also represents co-defendants on the same charge, it is less likely that the individual accused will receive the kind of assistance from counsel to which he is entitled.

There is a third very cogent reason for condemning multiple representation. That is because of the inevitable conflict that arises in cases of this type. Without fail, when numerous defendants are arrested for involvement in the same crime, they invariably each point at someone else as being the major culprit. Each is anxious to minimize his own role in the crime and maximize the activity of others. Thus, one attorney trying to represent all of these defendants is inevitably faced with an irreconcilable conflict of interest between his clients. He can not advocate the position of one client without detriment to the position of another of his clients. In the situation such as herein, if the attorney had advised three of his clients to plead guilty and the fourth not to, and the fourth was acquitted, the attorney would be immediately accused of malpractice by his other three clients. Such conflict between clients would leave the defense attorney no choice to do other than was done in this case and that is to outline the bare facts of the situation and then say "Gentlemen, it's up to you. What do you want to do?" This is not the counsel and advice that a defendant is entitled to expect from his attorney. He is entitled to expect more than that. He is entitled to expect his attorney to evaluate his chances and prospects and to advise and recommend to him a course of action.

I am convinced that multiple representation by court appointed counsel is so inherently wrong that it must be presumed as a matter of law that any plea of guilty obtained from a defendant so represented can not be said to have been made voluntarily and understandingly. Therefore, because of such multiple representation, I would remand the case to the district court of Ada County with instruction to that court to set aside petitioners conviction and order the petitioner returned to Bannock County for further proceedings upon the indictment.

I think it should also be noted that the majority in remanding for proceedings under the Uniform Post-Conviction Procedure Act, in effect holds without deciding that habeas corpus can be replaced by such procedure.

In the first place that was never an issue herein and was never briefed. I do not think the court should change procedural avenues for petitioner without notice and opportunity for him to be heard thereon.

Furthermore, habeas corpus is constitutional and affords a constitutional right for the body of the petitioner to be produced in court. There is a question as to whether that constitutional right can be abrogated by the Uniform Post-Conviction Procedure Act which does not afford such absolute right.

Also, there is a question of whether petitioner's rights to habeas corpus under the United States Constitution would be denied by the majority's summary change to post-conviction relief procedure.

I do not think the foregoing questions should be resolved as herein done without analysis and consideration.