672 P.2d 237

**STATE of Idaho, Plaintiff-Respondent,**

v.

**David Zynn WILSON, Defendant-Appellant.**

**No. 14466.**

Court of Appeals of Idaho.

Nov. 7, 1983.

James C. Morfitt, Caldwell, for defendant-appellant.

Jim Jones, Atty. Gen., Lynn E. Thomas, Sol. Gen., Myrna A.I. Stahman, Deputy Atty. Gen., Boise, for plaintiff-respondent.

WALTERS, Chief Judge.

During the robbery of a grocery store in Nampa, Idaho, in February 1981, the store owner was shot and killed. Subsequently, two brothers, David Zynn Wilson and Kelly Brian Wilson, were charged with first degree murder, robbery, burglary and the use of firearms in the commission of those crimes.

David Wilson pled guilty to first degree murder, robbery and use of a firearm. He was sentenced by the district court to the custody of the state Board of Correction. He received a determinate, fixed life term for the crime of first degree murder. He was sentenced also to a concurrent, indeterminate life term for the crime of robbery, and he was sentenced to a consecutive, indeterminate three-year period for the use of a firearm in the commission of the robbery. On appeal from his convictions, Wilson questions (a) whether the sentences were an abuse of the court's discretion; (b) whether his presentence report was adequate; and (c) whether the district court erred in denying his motion, made after sentencing, to reduce the sentences.

For reasons explained in this opinion, we hold that the sentences imposed in this case should be vacated and the case remanded for further sentencing consideration by the district court. Accordingly, we do not reach the questions of whether the sentences now before us represent an abuse of discretion or whether they should have been reduced in response to a post-sentencing motion. However, in view of the remand, we do address Wilson's challenge to the presentence report.

I

The crimes occurred as follows. Wearing ski masks over their heads and each armed with pistols, the two Wilson brothers robbed the Lone Star Market. They ordered the owner, his wife and two employees to the basement of the store and told them to remain there. Shortly afterward, apparently believing the robbers had left, the owner went upstairs. One robber, Kelly Wilson, was still in the store, while the other, David Wilson, had exited the store. Kelly Wilson returned the owner to the basement, and, in front of the other victims, fired a bullet point blank into the back of the owner's head. At his sentencing hearing, Kelly Wilson testified that the gun went off accidently as he was turning to leave. However, the two employees testified that Kelly Wilson had raised the point of the gun from either the owner's lower back or his shoulders to his head, shot him and then turned to leave. The employee closest to the stairs testified that he heard the gunman say "yaahoo, I did it," or something to that effect, after leaving the basement. Also, at the sentencing hearing, David Wilson testified that he had unloaded

both pistols before the robbery, but he had not checked the chamber of the gun used by his brother, Kelly. Apparently that firearm still contained a live round of ammunition, in the chamber.

Both defendants pled guilty pursuant to a plea bargain. In exchange for the pleas of guilty, charges against each defendant for first degree burglary and the use of a firearm during a burglary were dismissed by the prosecutor, and the prosecutor agreed not to request the death penalty for the murder. The prosecutor did, however, reserve the right to recommend fixed life sentences for the murder, indeterminate life sentences for the robbery, and a consecutive ten-year sentence on each defendant for use of firearms in the crimes.

Upon acceptance of the defendants' pleas, the court informed the defendants that the court was not bound by the prosecutor's recommendations. Because the defendants had pled guilty to first degree murder, it was necessary for the court to hold an aggravation and mitigation hearing, as provided by I.C. § 19–2515, to decide whether the death penalty would be imposed upon either defendant.

Such a hearing was held. At the conclusion of the hearing, the court noted certain aggravating factors which "could very well be found" beyond a reasonable doubt to justify imposing a death sentence for first degree murder. The court determined that the homicide was especially heinous, atrocious and cruel, manifesting exceptional depravity; that the shooting exhibited a callous and utter disregard for human life; that the homicide was murder in the first degree, and that it was accompanied by Kelly's specific intent to kill. The judge entered no finding that David intended or contemplated the killing.

With respect to David Wilson, the court also considered his prior criminal record, which included two prior convictions for burglary (one being a felony conviction) and prior convictions for petty theft, battery and possession of marijuana. David Wilson's probation officer disclosed that while Wilson was on probation for the felony

burglary conviction, he was uncooperative and frequently failed to comply with probation requirements. The court noted that Wilson had an extensive record of use of drugs and alcohol. However, the court found that David Wilson had not committed the murder himself and was not even in the store when the shooting occurred. The court further noted there was no competent evidence that David had instructed or encouraged Kelly to shoot anyone. Consequently, the court declined to impose the death penalty. Instead, as noted earlier, the court sentenced David Wilson to a fixed life term for the murder, to an indeterminate life term for robbery and to an additional three years for the use of a firearm in the robbery.

## II

At the time of the sentencing, prior case law in Idaho indicated that David Wilson could be subject to the death penalty for the killing of the store owner in the course of the robbery, where the shooting was done by his co-defendant Kelly Wilson. See State v. Atwood, 95 Idaho 124, 504 P.2d 397 (1972); State v. Owen, 73 Idaho 394, 253 P.2d 203 (1953); and State v. Powell, 71 Idaho 131, 227 P.2d 582 (1951). However, subsequent to the Wilsons' sentencing, and while this case was pending on appeal, the United States Supreme Court decided Enmund v. Florida, 458 U.S. 782, 102 S.Ct. 3368, 73 L.Ed.2d 1140 (1982). In Enmund, the Court held that the imposition of the death penalty upon a participant in a robbery in which a murder was committed was unconstitutional as a form of cruel and unusual punishment under the eighth amendment, where that participant did not himself kill, attempt to kill, intend to kill, or contemplate that a life would be taken. While the district court below did not have the benefit of Enmund at David Wilson's sentencing, in fact the court determined, consistent with Enmund, that the death penalty should not be imposed.

However, with respect to the range of other sentences which could be imposed for first degree murder, the record in this case

discloses that the district judge deemed his options to be limited to fixed life or indeterminate life. He considered it beyond his power to impose, as an alternative, a determinate or fixed sentence for a period of years less than life. As explained below, we hold today that imposition of such a sentence is proper under certain guidelines. Because sentencing discretion should be exercised with full awareness of all the alternatives, we conclude that David Wilson's sentence for first degree murder should be reconsidered by the district court. Also, since the sentences for robbery and use of a firearm may have been correlated with the murder sentence, we similarly remand them for concurrent reconsideration.

The record also discloses confusion on the part of counsel who represented the state and the Wilson brothers, concerning the actual duration of a fixed "life" sentence. For guidance on remand, we also will examine that point.

*Availability of Fixed Term Sentence for First Degree Murder.*

After the sentencing of the Wilson brothers, the Commission of Pardons and Parole sought an opinion from the Attorney General concerning the actual duration of the fixed life sentences given to the Wilsons. Having been made aware of that request, the sentencing judge submitted a letter to the Attorney General.[1] In that letter, the judge not only made observations regarding the duration of the fixed life sentences, but he also addressed the question whether a sentence for a fixed term of years, less than natural life, could be imposed in a first degree murder case. He said that he had held the view, during the Wilson brothers' case, that this alternative was not available to him. We now turn to that question.

Prior to its amendment by the Legislature in 1977, I.C. § 18–4004 prescribed the death penalty as the sole punishment for first degree murder. As a result of the 1977 amendment, I.C. § 18–4004 now reads (as it did at the time of Wilson's crimes):

[E]very person guilty of murder of the first degree shall be punished by death or by imprisonment for life. . . .

A few days later, during the same legislative session, the fixed sentencing statute, I.C. § 19–2513A, was adopted. That statute provides:

As an alternative to an indeterminate sentence for any person convicted of a felony, the court, in its discretion, may sentence the offender to the custody of the state board of correction for a fixed period of time not less than two (2) years and not more than the maximum provided by law for said felony.

When section 19–2513A was added in 1977, all sentences imposed for felony convictions had been subject to Idaho's indeterminate sentencing law, I.C. § 19–2513. That law provides in part:

Whenever any person is convicted of having committed a felony, the court shall, unless it shall commute the sentence, suspend or withhold judgment and sentence or grant probation . . . or unless it shall impose the death sentence as provided by law, sentence such offender to the custody of the state board of correction for an indeterminate period of time, but stating and fixing in such judgment and sentence a maximum term which term shall be for a period of not less than two (2) years nor exceeding that provided by law therefor, and judgment and sentence shall be given accordingly and such sentence shall be known as an indeterminate sentence. . . .

■ These statutes relate to the same subject, i.e., the sentencing of criminal defendants, and are thus *in pari materia.* They must be construed together to effectuate the legislative intent. *Union Pacific R. Co. v. Bd. of Tax Appeals,* 103 Idaho 808, 654 P.2d 901 (1982). Also, we must interpret the language of the statutes in favor of a reasonable operation. *State ex rel. Evans v. Click,* 102 Idaho 443, 631 P.2d 614

---

1. The Commission's request, the judge's letter and the Opinion of the Attorney General (Opinion No. 82–9, Sept. 9, 1982) were made a part

of the record on this appeal by stipulation and order of augmentation.

(1981), *cert. denied* 457 U.S. 1116, 102 S.Ct. 2927, 73 L.Ed.2d 1328 (1982).

Idaho Code § 19–2513A was enacted after the amendment of I.C. § 18–4004, which allowed for life imprisonment as an alternative to the death penalty for first degree murder. Also, as noted, until section 19–2513A was added, Idaho's statutory scheme for sentencing had allowed only indeterminate sentences under I.C. § 19–2513. We can presume that when the Legislature amended I.C. § 18–4004, it was aware of I.C. § 19–2513; that when the Legislature subsequently enacted I.C. § 19–2513A, it was aware of its recent amendment to I.C. § 18–4004; and that when it enacted both of these amendments, the Legislature also was aware of existing I.C. § 19–2513. *Parker v. Wallentine*, 103 Idaho 506, 650 P.2d 648 (1982), *citing State v. Jennings*, 95 Idaho 724, 518 P.2d 1186 (1974). Thus, we presume that when the Legislature gave the courts a choice between death or life imprisonment, for first degree murder under I.C. § 18–4004, this choice included an indeterminate life sentence under existing I.C. § 19–2513. Further, when the Legislature adopted I.C. § 19–2513A, we presume it was aware that an indeterminate life sentence could be imposed for first degree murder; and section 19–2513A added the fixed sentence for a specified term of years as an alternative to the indeterminate life sentence.

The fixed sentencing alternative supplements a sentencing judge's choices. The statement of purpose for I.C. § 19–2513A explains that a sentencing judge is to have authority to specify a fixed period of imprisonment, which must be served in full before the convict will be released, as an alternative to indeterminate sentencing by the court. *See* Statement of Purpose to House Bill 20 (1977). In contrast, the purpose of the indeterminate sentencing statute, I.C. § 19–2513, was to permit the state

commission of pardons and parole[2] to determine the actual period of confinement in any given case. *See State v. Evans,* 73 Idaho 50, 59, 245 P.2d 788, 794 (1952).

Following adoption of I.C. § 19–2513A, our Supreme Court ruled that the legislative purpose of I.C. § 19–2513A was to authorize courts to impose sentences of imprisonment without possibility of parole. *State v. Rawson,* 100 Idaho 308, 597 P.2d 31 (1979). The court analyzed both sentencing statutes, I.C. § 19–2513 and I.C. § 19–2513A, and determined that "[o]nly under the fixed term sentence is the offender precluded from obtaining parole." 100 Idaho at 313, 597 P.2d at 36. This would insure that an offender, whom the court believes should be held in prison, to protect society or for punishment or for deterrence, would not be released on parole before serving his full sentence.

The fixed sentence has the advantage of assuring confinement for a time certain (subject only to commutation), but the disadvantage of allowing a defendant to be released from any custody or supervision after that time.. Conversely, the indeterminate sentence has the advantage of allowing custody and/or parole supervision up to any time limit (within the statutory maximum) designated by the court, but it has the disadvantage that a defendant may be paroled or administratively discharged from custody as soon as the minimum confinement period under I.C. § 20–223 has been served. A district judge weighs these respective advantages and disadvantages whenever he chooses between a fixed sentence and an indeterminate sentence for any crime. Nothing about this choice inherently makes it less appropriate for first degree murder cases than for cases involving other homicides or other felonies.

In the present case, the state has argued that a fixed sentence for a term less than life, under I.C. § 19–2513A, would be incon-

---

**2.** The commission of pardons and parole exercises the "rights, powers and authority" of the board of pardons referred to in Article IV, § 7 of the Idaho Constitution. I.C. § 20–210. Our Supreme Court has held that the authority to *parole* a prisoner is not derived from the consti-

tutional powers of pardon or of commutation of sentences, but rather is predicated upon the legislative authority to establish suitable punishment for various crimes. *See Standlee v. State,* 96 Idaho 849, 852, 538 P.2d 778, 781 (1975).

sistent with the choice of death or life imprisonment posed by I.C. § 18–4004. However, neither of these statutes contains language excluding the other. We acknowledge that there is another dimension of the indeterminate life sentence which a fixed sentence for term of years lacks—the *potential* for extended (possibly even lifelong) custody and/or parole supervision of the convicted defendant. However, we do not believe this potential for extended control of the defendant under a indeterminate sentence is inconsistent with the view that a fixed sentence is available for first degree murder. Rather, it illustrates the trade-off inherent in choosing a fixed sentence under I.C. § 19–2513A as an alternative to an indeterminate sentence under I.C. § 19–2513.

■ Although section 19–2513A, viewed in isolation, would seem to authorize a sentence for any term of two or more years in any felony case, such an isolated view would disregard I.C. § 18–4004. As noted above, these statutes are *in pari materia* and must be harmonized with each other. An indeterminate life sentence is available for first degree murder under sections 18–4004 and 19–2513. Such a sentence requires an inmate to be confined for a term not less than the minimum period prescribed by I.C. § 20–223, which is presently ten years. We believe that section 19–2513A can be applied harmoniously with section 18–4004, in a first degree murder case, if the fixed sentence prescribes confinement for a term which is not less than would be required for an indeterminate life sentence under I.C. § 20–223. Therefore, under the present language of the statutes, a fixed term sentence for first degree murder may range from ten years to natural life.

■ The desirability of harmonizing these statutes is emphasized by the anomaly which otherwise would exist, if a court could apply I.C. § 19–2513A to a less serious crime, such as second degree murder (punishable by imprisonment of *up to life,* I.C. § 18–4004), but not to first degree murder. Such an interpretation would allow a

court to bar parole for the less serious crime, but would prevent the court from denying parole to an individual given a life sentence for a presumably more serious crime, unless the latter sentence was for fixed life. We conclude that under I.C. § 19–2513A a sentence to a fixed term of years can be imposed for first degree murder, as an alternative to fixed or indeterminate life imprisonment. The term of confinement under such a sentence must be not less than that which would be required to be served under an indeterminate life sentence. We intimate no view as to whether such a sentence should be imposed in the present case. That is for the district judge to determine in the exercise of sound sentencing discretion.

*Duration of a Fixed Life Sentence.*

The record further indicates that counsel for both Wilson brothers, and the prosecuting attorney, may have believed that a prisoner sentenced to a fixed life term would be eligible for release from incarceration after serving thirty years in the penitentiary. The judge did not express a view on this question, but in his post-sentencing letter to the Attorney General, he urged that the duration of a fixed "life" sentence be clarified. The uncertainty on this point may arise from language in several Idaho Supreme Court decisions concerning indeterminate sentences, stating that for the purpose of determining parole eligibility, any sentence beyond thirty years is an effective life sentence. *See King v. State,* 93 Idaho 87, 456 P.2d 254 (1969); *State v. Butler,* 93 Idaho 492, 464 P.2d 931 (1970); *and Pulver v. State,* 93 Idaho 687, 471 P.2d 74 (1970), *overruled on other grounds, State v. Tucker,* 97 Idaho 4, 539 P.2d 556 (1975). From this language, the view apparently has evolved that a life sentence means thirty years and that a person sentenced to a fixed life sentence will be eligible for release—outright or on parole—after thirty years. We believe this view is incorrect.

■ We reject, first, the notion of outright release from a fixed life sentence after thirty years. We hold that the dura-

tion of such a sentence is the full natural life of the inmate. Our holding in this regard is consistent with the published opinion of the Attorney General. *See* note 1, *supra.*

Second, we reject the contention that a fixed life sentence carries the possibility of parole in thirty years, or at any time. We do not believe the decisions in *King, Butler,* and *Pulver* support this contention. In those cases, the defendants were sentenced for varying periods, in excess of thirty years, under Idaho's indeterminate sentencing law. Under that law, for the purpose of determining when a defendant could become eligible for parole, our Supreme Court held that any sentence in excess of thirty years was to be treated as a life sentence. A life sentence was treated as a thirty-year indeterminate sentence, to allow for release on parole after service of one-third (or ten years) of a thirty-year sentence. *See* I.C. § 20–223.

However, our Supreme Court has held that under the fixed sentence statute, a prisoner serving a fixed term sentence never can become eligible for release on parole. Otherwise his sentence simply would be an indeterminate one, rendering the fixed sentence statute meaningless. *State v. Rawson, supra.* Thus, where a life sentence is imposed under the fixed sentence statute, the entire sentence must be served in confinement—none of it on parole. It is not subject to the thirty-year rule applicable to parole from indeterminate life sentences.

█ David Wilson questions whether a fixed term can be imposed under I.C. § 19–2513A when that fixed term is "life." He contends that the statute requires such a sentence to be for a "fixed period of time," and that a sentence, the length of which is determined by the duration of a person's life, is not "fixed." We are unpersuaded by this argument. We have held above that the duration of a fixed life sentence is the inmate's full natural life. Although the duration of one's life may not be fixed or determined at the time sentence is imposed, this does not mean that a fixed life sentence has an uncertain meaning.

The custodial responsibility of the Board, and the deprivation of the prisoner's liberty, are as fixed and determined by such a sentence as any court can make them.

### III

█ The foregoing analysis defines the latitude of the sentencing court in a first degree murder case. A judge's sentencing discretion, particularly in a case of this magnitude, should be exercised with full awareness of the limits and standards governing that discretion. The dissenting opinion in this case suggests that these limits and standards would not have affected the sentences imposed. However, we believe that proper appellate review of sentencing discretion should be free from speculation about what a judge might or might not have done.

█ Accordingly, we conclude that the fixed life sentence imposed on David Wilson for first degree murder must be vacated and the case remanded for resentencing. Because the other sentences for robbery and use of a firearm may have been correlated with the murder sentence, they must be vacated as well. On remand the district court is instructed to impose sentences which the court, in the sound exercise of its discretion, determines will result in the minimum term of confinement reasonably necessary to accomplish the primary sentencing goal of protecting society and the related goals of deterrence, rehabilitation and punishment or retribution for wrongdoing. *State v. Toohill,* 103 Idaho 565, 650 P.2d 707 (Ct.App.1982).

### IV

Because this case is being remanded, we will also examine David Wilson's contention that his presentence report was inadequate. He claims that the report failed to include either a complete summary of the presentence investigator's view of the psychological factors surrounding the commission of the crimes, or a specific recommendation regarding a psychological examination and a plan of rehabilitation. He asserts that

some material in the report was wholly speculative.

The record shows that, at the sentencing hearing, Wilson mentioned a few items in the report which he felt should be clarified, including allegedly speculative testimony. After all argument on sentencing was heard and a recess had been taken, the court asked if there was anything else of which the court should be made aware. At that time, Wilson asked only for a ruling that a written statement of one person be removed from the presentence report because it was totally speculative. The court granted that request and the statement was removed from the report. No other requests for alteration of the report, and no other objections to the report, were made.

 We have reviewed the presentence report. It satisfies the requirements of I.C.R. 32. Neither a recommendation for a psychological analysis by the presentence investigator, nor a plan of rehabilitation, is an essential requirement of a presentence report. They should be included "where appropriate." I.C.R. 32(b)(10). As noted, at the sentencing hearing, Wilson made no objection, and requested no alterations or corrections, to the report. He did not raise the issue of whether a plan of rehabilitation would be "appropriate" in his case. We will not review a challenge to a presentence report where the report substantially complies with I.C.R. 32 and where no objection to it was raised at the sentencing hearing. *Holmes v. State,* 104 Idaho 312, 658 P.2d 983 (Ct.App.1983).

 Upon remand the district court may order that the presentence report be updated, to include information available since the original report was written. Such information could include David Wilson's behavior and adjustment to confinement. *See State v. Fuller,* 104 Idaho 891, 665 P.2d 190 (Ct.App.1983). If Wilson has any objections to the contents of an updated report, including any information carried over from the original report, it will be necessary for him to raise those objections before the district judge. They will not be considered for the first time on appeal.

The sentences imposed on David Wilson are vacated. The case is remanded for resentencing in accordance with this opinion. The district court has authority to provide for Wilson's continued confinement during the resentencing proceedings. *Cf.* I.C. § 19–2802; I.C.R. 38(b).

BURNETT, J., concurs.

SWANSTROM, Judge, dissenting.

I disagree with the majority concerning the availability of a fixed sentence for a term of years less than life in a first degree murder case. Also, I am not convinced that uncertainty or confusion had any influence on the length of David Wilson's sentences, therefore I cannot see those circumstances as adequate legal grounds for vacating the sentences. I respectfully dissent.

By its 1977 amendment to I.C. § 18–4004, the Legislature said that a person guilty of first degree murder "shall be punished by death or by imprisonment for life." This mandatory language is plain and direct. It deserves to be given literal treatment if the result is reasonable and in harmony with other statutory provisions on the subject. *State ex rel. Evans v. Click,* 102 Idaho 443, 631 P.2d 614 (1981); *Sampson v. Layton,* 86 Idaho 453, 387 P.2d 883 (1963). It means simply that, if imprisonment is to be the punishment, the sentence must be for life. It may be either a fixed or indeterminate life sentence. With an indeterminate life sentence, other statutes come into play which define parole eligibility and give the commission of pardons and paroles the authority to determine the actual length of confinement. Those statutes have little or no applicability to a fixed sentence and we need not look to those statutes to determine the meaning of a fixed sentence.

The same statute that authorizes a choice between either death or life imprisonment for first degree murder authorizes a sentence of imprisonment of "not less than ten (10) years and [it] may extend to life" for murder in the second degree. I.C. § 18–4004. The sentence for second degree murder may be either an indeterminate or a

fixed sentence, but in either event the upper and lower limits are set by statute. Such limits are typically set by statutes relating to other crimes. We recognize that those limits apply to any fixed or indeterminate sentence that is given. Similarly, we should recognize the limitations set by the statute for first degree murder. Furthermore, it is obvious that the Legislature did not intend that the punishment for second degree murder would be the same as that for first degree murder. Yet the construction placed on I.C. § 19–2513A by the majority creates this anomalous result. Under the majority opinion, the penalty for first degree murder is either death or ten years to life. The Legislature plainly did not intend this result, but it can be avoided by recognizing that I.C. § 18–4004 does not authorize a fixed sentence for less than life in a first degree murder case.

The majority suggests that the legislative intent is distorted in some cases by allowing a court to bar parole for a less serious crime, while preventing the court from denying parole for a more serious crime. Under my view of the statutes, however, there is no such distortion. For the more serious crime, the judge can bar parole for the entire lifetime of the offender by choosing a fixed life sentence. For the less serious crime, the judge can bar parole for a specified time with a fixed sentence from ten years to life, or he can allow the possibility of parole by choosing an indeterminate sentence. This is a consistent result. Only if we compare parole eligibility under a *fixed* sentence for second degree murder with parole eligibility under an *indeterminate* sentence for first degree murder do we get the distortion which the majority tries to avoid. Yet this result is entirely possible under the majority opinion.

As noted above, there is another reason for my dissent in this case. Even if the district judge could have imposed a fixed sentence for a term of years less than life for the first degree murder conviction, there would still be no grounds for vacating the sentences. Nothing in the record of this case suggests that Judge Lodge wanted to impose some sentence for a term of years

less than life on the first degree murder charge. Moreover, the record indicates he held the belief, correctly, that a fixed life sentence would not permit parole eligibility in thirty years.

There were two serious crimes in this case, both demanding a heavy penalty. A life sentence was authorized for both the robbery and the murder. If the court had desired to give David a fixed sentence for a number of years in prison—less than life—he could have done so. This experienced judge was well aware that he could have given a fixed sentence for robbery, coupled with a indeterminate life sentence for the murder, for example. By doing so, he could have effectively assured that David Wilson would remain in prison, without eligibility for parole, for twenty, twenty-five, thirty years or more. Yet the fixed sentence would be less than life. The combinations available permitted the district judge great flexibility in pronouncing sentence for any fixed number of years that he might have chosen. He could do this because the two crimes were closely interwoven. In fact, but for David's participation in the robbery, he could not have been convicted of the murder which was the act of his brother. These circumstances allowed the district judge to tailor the overall sentence by an appropriate combination of sentences. Thus I do not see that he was constrained by any uncertainty in the law itself.

It is not necessary, now, in this appeal to decide the issue as to whether the fixed life sentence is excessive. However, to be candid about my position, I express some personal reservations about the imposition of a fixed life sentence without the possibility of parole in this case. Here the evidence of David's direct participation in the killing was scant and there was a reasonable doubt concerning David's intent to cause a death. At some time in the future it might become appropriate to shift the emphasis of the sentence from the protection of society and punishment to a consideration of David's rehabilitation into society. A fixed sentence for life will not permit that, unless the present sentence is commuted at some

future time. There is that possibility. As Judge Lodge noted, the commission of pardons and paroles now has authority to commute a fixed, as well as an indeterminate sentence. The defendant is not without hope that he can eventually earn his release from confinement.

My reservation about the sentence does not forestall my dissent. However, I would urge the Legislature to consider whether district judges should be given authority to impose a fixed sentence for a number of years, less than life, in first degree murder cases. The Legislature should have the final say here. They can benefit the administration of justice by bringing the judicial debate on this subject to an early end.