691 P.2d 1291

**STATE of Idaho, Plaintiff-Respondent,**

v.

**William WOLFE, Defendant-Appellant.**

**No. 14755.**

Court of Appeals of Idaho.

Nov. 30, 1984.

---

Gregory FitzMaurice, Grangeville, for defendant-appellant.

Jim Jones, Atty. Gen., Lynn E. Thomas, Sol. Gen., Boise, for plaintiff-respondent.

SWANSTROM, Justice.

William Wolfe was found guilty by a jury of first degree murder, I.C. § 18–4001, § 18–4003, and was given a fixed life sentence of imprisonment under I.C. § 19–2513A. Wolfe contends there was insufficient evidence to establish that the killing was premeditated and to show the requisite intent of malice aforethought, which are necessary elements of the crime of first degree murder. Wolfe further contends that the sentence imposed is excessive. We reject both of these contentions and affirm.

I

Wolfe first asserts that the evidence was insufficient to support a conviction of first degree murder. It is well established that a jury verdict supported by substantial, competent evidence will not be disturbed on appeal. *State v. Gerdau*, 96 Idaho 516, 531 P.2d 1161 (1975). The standard of review on appeal requires a review of the record to determine if sufficient evidence exists and we are precluded from substituting our judgment for that of the jury as to the credibility of witnesses, the weight of the testimony and the reasonable inferences to be drawn from the evidence. *State v. Campbell*, 104 Idaho 705, 662 P.2d 1149 (Ct.App.1983). Furthermore, on appeal, where a defendant stands convicted, we view the evidence most favorably to the prosecution. *State v. Fenley*, 103 Idaho 199, 646 P.2d 441 (Ct.App.1982). Viewed in that light, the evidence shows the following events.

In the evening hours of February 20, 1982, Wolfe arrived at the Silver Dollar Bar, in Stites, Idaho County, Idaho. In the bar were numerous friends and acquaintances of Wolfe, including the victim, Scott Gold. Wolfe had been drinking that evening and he continued to do so. He also played pool, moved about, recognizing people he knew and carried on conversations with various persons. However, during the evening Wolfe got into an argument with his friend, Scott Gold, and became increasingly belligerent. Several persons noticed that Wolfe was carrying a pistol tucked into his belt. He appeared intoxicated to some degree, but according to witnesses, he did not slur his words nor stumble about. He appeared steady. Gold tried to calm Wolfe who was heard to say, "Don't make me do what you're going to make me do." Apparently at Gold's suggestion, the two went outside. A witness who followed the two outside said he heard Gold ask Wolfe, "What are you going to do? Are you going to hit me, man? Are you going to shoot me? I am your friend, what is the matter with you?" Wolfe then reached behind his back. The witness heard a click and saw Wolfe take the gun and place it against Gold's chest and pull the trigger.

Wolfe lists several factors in support of his argument that he was incapable of forming the requisite malice or intent to commit murder. These factors are his previous history of alcohol abuse, his purported state of intoxication at the time of the crime, the provocation of an argument he had with the victim before the shooting, and finally the short period of time between the argument and the crime within which he could have formed the requisite

intent or malice. I.C. § 18–4002 states that:

> Such malice may be expressed or implied. It is expressed when there is manifested a deliberate intention unlawfully to take away the life of a fellow creature. It is implied when no considerable provocation appears, or when the circumstances attending the killing show an abandoned and malignant heart.

Our Supreme Court has held on several occasions that where a defendant uses a deadly weapon against the person of another in a deadly and dangerous manner, the element of malice may be presumed. *State v. Warden,* 100 Idaho 21, 592 P.2d 836 (1979); *State v. Gomez,* 94 Idaho 323, 487 P.2d 686 (1971); *see also, State v. Rodriquez,* 106 Idaho 30, 674 P.2d 1029 (Ct.App.1983). Therefore, the jury could properly have found malice from the evidence showing Wolfe's unlawful use of a deadly weapon in a dangerous way. It is the province of the jury to determine whether the evidence in the record only supports a conviction of voluntary manslaughter or whether there is sufficient proof of malice to justify a conviction for first degree murder. *State v. Gomez, supra.*

For first degree murder to be proven, it must be shown that the killing was "wilful, deliberate and premeditated." I.C. § 18–4003(a). However, it has been established that direct evidence of a deliberate and premeditated purpose to kill is not required, such a purpose may be inferred from the facts and circumstances of the killing. *State v. Foley,* 95 Idaho 222, 506 P.2d 119 (1973). Further, premeditation does not require an appreciable space of time between the intention to kill and the killing—they may be instantaneous as two successive thoughts of the mind. *Carey v. State,* 91 Idaho 706, 429 P.2d 836 (1967).

Wolfe contends that the murder could not have been premeditated, largely due to his intoxicated state. Here, the jurors were instructed that they could "take into consideration the fact that the accused was intoxicated at the time, in determining the purpose, motive or intent with which he committed the act." I.C. § 18–116. They were told to determine "whether the accused was so intoxicated as to create a reasonable doubt of his deliberate premeditated intent to kill." We can only presume that the jurors considered the evidence with these instructions in mind.

The jurors heard testimony that Wolfe was capable of playing pool that night, and of recognizing people and speaking to them in a coherent manner. One witness stated that Wolfe did not slur his words, stumble about or weave back and forth while talking. The state also points to Wolfe's telling the victim, "Don't make me do what you're going to make me do." Further, according to the eye witness, Wolfe calmly and deliberately raised the gun to the victim's body and fired. In addition, immediately following the crime, he spoke to several people indicating an awareness of the nature and wrongfulness of his act. Finally, Wolfe showed significant presence of mind in his attempts to evade capture by the police shortly after the crime.

From such evidence it reasonably could be inferred that Wolfe did not act upon provocation or in the heat of passion. The jury was entitled to reject the defense counsel's contention that Wolfe was too intoxicated to form the intent to kill or to premeditate the killing. Wolfe has cited *State v. Sprouse,* 63 Idaho 166, 118 P.2d 378 (1941), as support for his argument. Upon somewhat similar facts in that case, the evidence was held on appeal to be insufficient for murder and the conviction was reduced to voluntary manslaughter. The intoxication of the defendant was considered in determining the existence of malice aforethought. The court gave no explanation other than it was acting on its power "to mete out fundamental justice." Therefore, *Sprouse* provides limited precedential value and we are not persuaded by it. We conclude that the evidence in this case was sufficient to support a finding of malice and premeditation, and the matter was therefore properly within the exclusive province of the jury. *State v. Olin,* 103 Idaho 391, 648 P.2d 203 (1982).

## II

■ Wolfe next contends that the trial judge abused his sentencing discretion by imposing an unduly harsh sentence. The judge perceived that he had only three choices: A sentence to death, a fixed sentence of life, or an indeterminate life sentence. I.C. §§ 18–4004, 19–2513 and 19–2513A. He chose the second alternative. At oral argument on appeal, Wolfe's counsel suggested—in light of this court's majority decision in *State v. Wilson*, 105 Idaho 669, 672 P.2d 237 (Ct.App.1983), decided after Wolfe was sentenced—that the judge was unaware he also had the option to impose a fixed sentence for ten or more years. However, after reviewing *Wilson*, our Supreme Court has now held that if a sentence of imprisonment is imposed for murder in the first degree it must be for life, although it may be either an indeterminate life sentence or a fixed life sentence. *State v. Wilson*, 107 Idaho 506, 690 P.2d 1338 (1984). Therefore, the trial judge correctly viewed the options available to him.

■ Where, as here, a sentence is within statutory limits it will not be disturbed unless clear abuse of discretion is shown. *State v. Bartholomew*, 102 Idaho 106, 625 P.2d 1109 (1981). Such an abuse of discretion may be found if the sentence imposed is shown to be unreasonable upon the facts of the case. *State v. Nice*, 103 Idaho 89, 645 P.2d 323 (1982). A sentence is reasonable to the extent it appears necessary, at the time of the sentencing, to accomplish the primary objective of protecting society and to achieve any or all of the related goals of deterrence, rehabilitation or retribution applicable to a given case. *State v. Toohill*, 103 Idaho 565, 650 P.2d 707 (Ct. App.1982).

■ Sentencing determinations cannot be made with precision. In deference to the discretionary authority vested in Idaho's trial courts, an appellate court will not substitute its view for that of the sentencing judge where reasonable minds might differ. The appellant must show that, under any reasonable view of the facts, his sentence was excessive in light of the criteria of protection of society, retribution, deterrence and rehabilitation. *State v. Toohill, supra.*

■ In applying the *Toohill* standard, we first must determine the actual measure of confinement for sentencing review purposes. Where a life sentence is imposed under the fixed sentence statute, the duration of such a sentence is the full natural life of the inmate. The entire sentence must be served in confinement with none of it on parole. *State v. Wilson*, 105 Idaho 669, 672 P.2d 237 (Ct.App.1983), *rev'd on other grounds*, 107 Idaho 506, 690 P.2d 1338 (1984). Therefore, the question facing us is whether confinement for this period of time appears, under any reasonable view of the facts, to be longer than necessary to accomplish the primary objective of protecting society and to achieve any or all of the related goals of deterrence, rehabilitation or retribution.

■ When weighing the reasonableness of a sentence, our examination of the record focuses upon the nature of the offense and upon the character of the offender. There is no more serious crime than the intentional killing of another person. The life taken can never be restored. The judge who heard the evidence described the crime as unprovoked, showing an utter disregard for human life.

Concerning the character of Wolfe, the record indicates that Wolfe has a history of confrontations with the law and a history of alcohol abuse. A psychologist at the sentencing hearing testified that Wolfe was diagnosed as having an antisocial personality disorder as well as suffering from chronic alcoholism. In addition, the psychologist testified that ten years from now Wolfe would be in very much the same condition. He concluded that Wolfe will continue his antisocial patterns and abuse of alcohol unless restrained. In his written report to the district judge, the psychologist stated, that in his opinion, Wolfe's personality disorder is most difficult to treat and that the prognosis for a successful treatment would be poor. He further stated that Wolfe would be a severe risk to others in society since individuals with this

antisocial personality disorder are prone to impulsive and poorly considered acts. In addition, he stated that chronic alcoholism seems to further diminish judgment.

The presentence investigator stated in his conclusion that Wolfe is an aggressive, violent person who, when under the influence of alcohol, carries these traits to the extreme. The investigator reported that although Wolfe expressed remorse over killing his friend, he still commented on how the victim should not have put his hands on Wolfe during their argument. It appeared to the investigator that Wolfe believed the unwanted contact was justifiable grounds for violent reprisal. He stated that Wolfe is a menace to society and suggested that for society's protection he be removed from society.

The judge recognized as mitigating factors the alcohol involved in the crime, the age of Wolfe, who is twenty-seven years old, and the fact that he had no previous felony convictions. However the judge stated that he had no belief that Wolfe could be rehabilitated in any setting. He believed that Wolfe's pattern of living will inevitably lead to further criminal activity. The judge commented that if allowed in society Wolfe would seriously injury or kill another human being and therefore, society must be protected from him. The judge also stated that a lesser sentence would depreciate the seriousness of the crime. Finally the judge commented that the sentence would be suitable punishment to provide deterrence not only for Wolfe but also for other members in society.

In our opinion, the district court judge gave sound reasons for his sentencing decision. The judge's comments reflect that he considered both the offender and the offense. They also reflect a general concern about protecting society. A sentence of incarceration may be utilized to minimize the risk of recurrence of a defendant's criminal conduct. *E.g., State v. Jenkins*, 105 Idaho 166, 667 P.2d 269 (Ct. App.1983). Deterrence of others is also a sufficient ground for imposing a substantial prison sentence. *E.g., State v. Adams*, 99 Idaho 75, 577 P.2d 1123 (1978). Wolfe's

history of behavioral and alcohol related problems showed that there is little likelihood for Wolfe to successfully rehabilitate himself. The serious nature of the crime demonstrated that society is in need of extensive protection from Wolfe's conduct. We believe the fixed sentence was appropriately tailored to the purposes suggested by the district judge. We conclude that Wolfe has not shown upon any reasonable view of the facts that the sentence imposed was excessive.

The judgment of conviction and the sentence are affirmed.

WALTERS, C.J., and BURNETT, J., concur.